WELLER v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, *Appellant.*

### Division One, March 5, 1894.

1. **Railroad:** TRAVELER: APPROACHING TRACK: NEGLIGENCE. One knowingly approaching a railroad track must use his sense of sight or hearing to ascertain if there be danger. If the view is so obstructed that he can not see he should carefully listen.

120 635
123 334

120 635
127 213

120 635
129 420

120 635
140 ·61
71a 143

120 635
142 664

120 635
f162 603
89a 540

120 635
s164 186
164 199

120 635
91a 114

Weller v. The C., M. & St. P. R'y Co.

2. ———: ———: ———. The circumstances may not require that such traveler both look and listen but common prudence demands that he do either the one or the other and a failure on his part to do so renders his act negligent in law.

3. ———: TRAVELER: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. Where, in an action against the railroad for the death of the traveler at a highway crossing, the negligence of the company is clearly established, the defense of contributory negligence must be clearly made out to warrant the trial court in taking the case from the jury and if inferences other than that of contributory negligence may be fairly drawn from the evidence, the question is for the jury.

4. ———: ———: ———: ———. Evidence in such case by the only eye witness to the accident that the deceased, who was driving a wagon in the night time, did not use any precaution to ascertain the approach of the train after he got within fifty feet of the track does not show him to have been guilty of contributory negligence as a matter of law where it appears that he had an unobstructed view of the track for six hundred feet before reaching the crossing.

5. ———: ———: ———: INSTRUCTION: PRESUMPTION. Where in such case the evidence tends to show that the deceased drove recklessly on the track, it is error to instruct the jury that he had a right to presume that the servants of the company would use ordinary care in moving trains and that he was not bound to anticipate negligence on their part.

6. Statute: ORDINANCE: CONTRIBUTORY NEGLIGENCE. The rule of contributory negligence is not changed or abrogated by reason of a statute or ordinance imposing the duty on account of a violation of which the injury resulted.

7. Negligence: RAILROAD: EVIDENCE. Evidence as to the social or business standing or relationship of the widow is inadmissible in an action by her for the fixed sum of $5,000 for the death of her husband caused by the collision with a train at a crossing.

8. ———: ———: COLLISION WITH TRAIN: NEGLIGENT DRIVING. The driving of a horse at a rate of speed prohibited by a city ordinance at the time of the collision between the wagon and a railroad train on a highway crossing is such negligence on the part of the driver as will prevent recovery against the company if such rate of speed contributed directly to the accident.

*Appeal from Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

REVERSED AND REMANDED.

*Pratt, Ferry & Hagerman* for appellant.

(1) The demurrer to the evidence should have been sustained, and defendant's instruction 1 should have been given, because the deceased was guilty of contributory negligence. *First.* It was the duty of deceased to look and listen, and if there were any difficulties in the way of seeing or hearing he should have stopped, and if, by complying with such duty, he could have discovered the approach of the train, then he was guilty of negligence contributing to his injury. Beach on Cont. Neg. [2 Ed.], sec. 180; *Harlan v. Railroad*, 64 Mo. 480; *Fletcher v. Railroad*, 64 Mo. 484; *Zimmerman v. Railroad*, 71 Mo. 476; *Henze v. Railroad*, 71 Mo. 636; *Purl v. Railroad*, 72 Mo. 168; *Turner v. Railroad*, 74 Mo. 602; *Kelley v. Railroad*, 75 Mo. 138; *Lenix v. Railroad*, 76 Mo. 84; *Hixson v. Railroad*, 80 Mo. 340; *Johnson v. Railroad*, 77 Mo. 546; *Stepp v. Railroad*, 85 Mo. 229; *Kelly v. Railroad*, 88 Mo. 534; *Butts v. Railroad*, 98 Mo. 272; *Hanlon v. Railroad*, 104 Mo. 381; *Dlauhi v. Railroad*, 105 Mo. 645; *Boyd v. Railroad*, 105 Mo. 371. *Second.* The noise of Weller's wagon, and any of the difficulties in the way of seeing, if existing as claimed, made it his imperative duty to stop; at least to slacken the speed of his horse. *Henze v. Railroad*, 71 Mo. 636; *Turner v. Railroad*, 74 Mo. 602; *Hixson v. Railroad*, 80 Mo. 335; *Stepp v. Railroad*, 85 Mo. 229; *Chase v. Railroad*, 78 Me. 346; *Fleming v. Railroad*, 49 Cal. 253; *Merkle v. Railroad*, 49 N. J. L. 473; *Seefeld v. Railroad*, 70 Wis. 216; *Mynning v. Railroad*, 64 Mich. 93; *Mantel v. Railroad*, 33 Minn. 62; *Haines v. Railroad*, 41 Iowa, 227; *Benton v. Railroad*, 42 Iowa, 192; *Mahlen v. Railroad*, 49 Mich. 585; *Railroad v. Holmes*, 3 Wash. 202; *McCrory v. Railroad*, 31 Fed. Rep. 531; *Tucker v. Duncan*, 9 Fed. Rep. 867; *McCall v. Railroad*, 54 N. Y. 642; *Haas v. Railroad*, 47 Mich.

401; *Schaefert v. Railroad*, 62 Iowa, 624. *Third.* The facts being disclosed by the testimony of an eye witness, there is no room for indulging in conjecture or calling to our aid any presumptions. *Mynning v. Railroad*, 64 Mich. 93, and cases cited; *Railroad v. Stebbing*, 62 Md. 502; *Dewald v. Railroad*, 44 Kan. 586; *Galpin v. Page*, 18 Wall. 350; *Railroad v. Holmes*, 3 Wash. 202. (2) Defendant's instruction 3 was improperly refused. The refused instruction simply declared that, upon the facts, the deceased did not comply with his legal duty in approaching the railroad tracks. (3) Plaintiff's instruction 1 erroneously submitted the facts as to a violation of section 10, article 37, revised ordinances, when such submission was not justified by the evidence. (4) Plaintiff's instructions 1 and 2 were misleading, in that they told the jury that the burden was on defendant to prove contributory negligence, when defendant had offered no evidence and relied solely on that introduced by plaintiff. (5) The court below erred in giving plaintiff's instruction 3 saying that Weller could presume that defendant would not be negligent. *First.* This instruction assumed that the deceased actually had in mind the requirements of the law and ordinances establishing defendant's duty and relied thereon. The presumption referred to (if the instruction properly states the law) was one of fact (*Justice v. Lang*, 52 N. Y. 323) and should not have been mentioned to the jury when the issue as to contributory negligence was submitted. *Lynch v. Railroad*, 112 Mo. 420; *Moberly v. Railroad*, 98 Mo. 183; *Rapp v. Railroad*, 106 Mo. 423; *Meyers v. Kansas City*, 18 S. W. Rep. (Mo.) 914; *Ham v. Barrett*, 28 Mo. 388; *Chouquette v. Barada*, 28 Mo. 491; *Schulter v. Ins. Co.* 1 Mo. App. 285; *Railroad v. Stebbing*, 62 Md. 504; *Railroad v. Brazil*, 72 Tex. 233; *Heldt v. Webster*, 60 Texas, 207; 2 Thompson on Trials, sec. 2290. *Second.*

The instruction is also vulnerable to the objection that it singles out and improperly comments upon an isolated matter. *Lynch v. Railroad, supra; Chouquette v. Barada*, 28 Mo. 491; *Anderson v. Kincheloe*, 30 Mo. 520; *Clark v. Hammerle*, 36 Mo. 620; *Chappell v. Allen*, 38 Mo. 213; *Fine v. Schools*, 39 Mo. 59; *Jones v. Jones*, 57 Mo. 138; *Forrester v. Moore*, 77 Mo. 651; *Barr v. Kansas City*, 105 Mo. 550; *Willmott v. Railroad*, 16 S. W. Rep. (Mo.) 500; *Schulter v. Ins. Co.*, 1 Mo. App. 285; *Weil v. Schwartz*, 21 Mo. App. 372; *Heldt v. Webster*, 60 Tex. 207; *Railroad v. Brazil*, 72 Tex. 233. *Third.* Independently of the last proposition, the instruction was erroneous, because it gave the right to assume that defendant had complied with the law and ordinances, simply because deceased did not know to the contrary, without regard to the question whether by ordinary care he could have so known. The right to presume that a railroad company will comply with the law as to signals only exists where the traveler performs his duty before crossing the track and then neither knows nor can know to the contrary. Beach on Contributory Negligence [2 Ed.], secs. 38, 39; 1 Shearman & Redfield on Negligence [4 Ed.], sec. 92; *Lynch v. Railroad, supra; Fletcher v. Railroad*, 64 Mo. 484; *Zimmerman v. Railroad*, 71 Mo. 476; *Turner v. Railroad*, 74 Mo. 602; *Hanlon v. Railroad*, 104 Mo. 381; *Dlauhi v. Railroad*, 105 Mo. 645; *Leduke v. Railroad*, 4 Mo. App. 485; *Grippen v. Railroad*, 40 N. Y. 34; *Childs v. West Troy*, 23 Hun, 68; *Grimb v. Railroad*, 1 N. Y. St. Rep. 715. The thought of the instruction directly opposes the rule of law that a person about to cross a railroad track must look and listen. (6) The court erred in excluding section 1 of article 34, revised ordinances of the city, providing against driving "faster than a moderate gait," and so as not to collide with any object. (7) The court erred in per-

mitting Collins to testify as to the effect of the rays of a headlight upon a traveler. These questions, so asked the witness, called for what was peculiarly for the jury and for matters that the latter were as capable of knowing about as the witness. *Gavisk v. Railroad*, 49 Mo. 274, 277; *Eubank v. Edina*, 88 Mo. 650; *Gutridge v. Railroad*, 94 Mo. 468. (8) The attending physician, Halley, was improperly permitted to say he was called by the family; that Weller's wife was too sick to go to the hospital; that her brothers went, and that they were related to one Thomas West. This testimony was offered simply to arouse sympathy, and to connect the plaintiff with Thomas West, who had some sort of standing with some juror. *Stephens v. Railroad*, 96 Mo. 207; *Overholt v. Vieths*, 93 Mo. 422; *Railroad v. Roy*, 102 U. S. 451; *Chicago v. O'Brennan*, 65 Ill. 160; *Railroad v. Powers*, 74 Ill. 341; *Railroad v. Moranda*, 93 Ill. 302.

*Gage, Ladd & Small* for respondent.

(1) Objection is made to the declaration in plaintiff's instructions numbers 1 and 2, that the burden of proving contributory negligence on the part of the deceased was upon the defendant. That such an instruction is proper is settled by the decisions of this court. *Huckshold v. Railroad*, 90 Mo. 548; *Murray v. Railroad*, 101 Mo. 236. (2) And the precise point of the objection founded upon a fanciful distinction between the above cases and the one at bar is met by *Railroad v. Horst*, 93 U. S. 291; *Railroad v. Tobriner*, 13 Sup. Ct. Rep. 557. (3) Plaintiff's instruction number 3 is justified by the repeated declarations of this court. *Eswin v. Railroad*, 96 Mo. 290; *O'Connor v. Railroad*, 94 Mo. 150; *Kellny v. Railroad*, 101 Mo. 78; *Jennings v. Railroad*, 20 S. W. Rep. 491; *Kenney v.*

*Railroad*, 105 Mo. 270. (4) Defendant's instruction number 3 was properly refused. It was equivalent to a demurrer to the evidence. (5) There is no foundation in reason for the objection to Dr. Halley's testimony, and the authorities cited do not support the objection. They deal with the competency of testimony which may tend to swell a verdict beyond compensation for the injury sustained. (6) There was no error in permitting Collins to testify as to the effect of the cable lights. The jury did not know what kind of lights they were, and the testimony as to the effect which they produced was simply descriptive of their character. He was testifying to a fact which he knew and in no sense to a conclusion or opinion of his own. *Loewer v. Sedalia*, 77 Mo. 431; *Commonwealth v. Sturtivant*, 117 Mass. 122; Wharton on Evidence [3 Ed.], sec. 511. (7) The court did not err in excluding the ordinance prohibiting driving "faster than a moderate gait." The ordinance fixed no prohibited rate of speed. Even if the ordinance had fixed a definite rate which must not be exceeded, the violation of it would not have precluded a recovery unless it contributed to the accident. (8) If the defendant had desired the attention of the jury directed specifically to the rate of speed at which Weller was driving it should have requested further instruction upon that point. *Doyle v. Railroad*, 20 S. W. Rep. 970. (9) Whether Weller was exercising ordinary care when injured was a question for the jury. *Roddy v. Railroad*, 104 Mo. 234; *Kenney v. Railroad*, 105 Mo. 285; *Huhn v. Railroad*, 92 Mo. 440; *Nagel v. Railroad*, 75 Mo. 653.

MACFARLANE, J.—Plaintiff sues to recover damages on account of the death of her husband, caused, as is alleged, by negligence of defendant. The accident resulting in the death of plaintiff's husband

occurred on December 6, 1887, at a point on Fifteenth street, in Kansas City, where it is crossed by the Belt Line Railroad, and by a train of cars operated by defendant over that road. The trial resulted in a judgment against defendant for $5,000, and it appealed therefrom.

The negligence charged was, *first*, in running the train in the city at a rate of speed in excess of six miles an hour; *second*, running the train without having at least "one large lamp, headlight, or lantern conspicuously placed in front of the same,"—both contrary to the ordinances of the city; and *third*, a failure to give the required statutory signals of ringing a bell on the engine in approaching the crossing. The answer was a general denial and a plea of contributory negligence.

Fifteenth street was one of the principal thoroughfares of the City of Kansas, running east and west. In the center of the street was a double track, cable street railway, cars going east running over the south track, and those running west over the north track. The Belt Line Railroad, also double tracked, running in a northeasterly and southeasterly direction, crossed this street at an angle of about thirty-three degrees. The street, as well as the Belt road, towards the northeast, was graded some feet above the level of the land on either side, on account of a ravine running across them. About eighteen feet of the graded street lay between the north rail of the northmost cable track and the top of the grade. Askew street, running north and south, intersected Fifteenth street, measuring by the traveled part of the street, about 120 feet east of the most westerly rail of the Belt road. On the corner of Askew avenue and Fifteenth street stood two small frame buildings, occupying about fifty feet, fronting on the latter street. After these buildings are passed, one traveling east has an unobstructed view of the Belt

Line road for six hundred or seven hundred feet, to about the eastern limits of the city. On Askew avenue about half a block north of Fifteenth street was located the depot of a dummy line railroad. This line ran up Askew avenue to the next street (Fourteenth) which it followed towards the east one block, and then took a northwesterly direction.

At the date of the accident—December 6, 1887— defendant was constructing its road outside the city, and was accustomed in the evening of each day to run in a work train on this Belt line. The husband of plaintiff lived east of the city, and traveled over Fifteenth street in going and returning from his home to the city. An ordinance prohibited the running of trains in excess of six miles an hour, and required each train run in the city after sunset to have one large headlight, lamp, or lantern conspicuously placed in front of the same. On the evening of December 6, deceased, returning from the city to his home, driving a horse attached to a light wagon along the north side of Fifteenth street, collided with the work train operated by defendant over the Belt road, and from injuries received therefrom died in a few days. At the conclusion of the evidence offered by plaintiff, defendant asked that the jury be instructed to return a verdict for defendant, which was refused.

The court gave the following instructions for plaintiff:

"1. The jury are instructed that at the time said William P. Weller was injured the law imposed upon the servants, agents, and employees of the defendant, while running, conducting or managing the locomotive and train of cars in question, the following duties: That they should not move the same within the city limits of the City of Kansas at a greater rate of speed than six miles an hour; that they should not run

and move said locomotive and train of cars within the City of Kansas, between sunset and sunrise, without having at least one large lamp, headlight, or lantern in a conspicuous place in front of the same, facing the direction in which the same was moving; that they should, immediately upon entering the City of Kansas, cause the bell on the engine to be rung, and keep the same ringing until the same should have crossed Fifteenth street. And if the jury believe from the evidence that the agents, servants, and employees of the defendant, while running, conducting, or managing said locomotive and train of cars upon the occasion referred to, failed to perform any one or more of the particulars hereinbefore mentioned, the deceased received the injuries which resulted in his death, your finding should be for the plaintiff, unless you further believe from the evidence that the deceased was guilty of negligence which contributed to the injury; and the burden of proving such negligence is upon the defendant."

"3. Negligence on the part of the deceased which will prevent the plaintiff recovering in this action must be such as directly contributed to his injury, and consists of the want of ordinary care. Ordinary care means that degree of care which may be reasonably expected of ordinarily prudent persons in the situation of the plaintiff's husband at and just before the time the accident occurred, and in determining whether the deceased was using such care you should take into consideration all the circumstances surrounding him at the time; and you are also instructed that he had a right to presume that the agents and servants of the defendant, in moving trains along said railroad track, would use ordinary care, and he was not bound to anticipate or be prepared for any acts or omissions on their part

declared by the court in plaintiff's instruction number 1 to be negligence."

For. defendant it granted the following:

"2. It was the duty of Weller to both look and listen for approaching trains on the Belt Line track. If on account of darkness or other cause, he was prevented from seeing, then he was bound to take extra precaution by listening. And if the noise from his wagon, if any, prevented his hearing the approach of the train, then he was required to stop and listen. These duties the law required of him, and any failure to comply therewith was negligence."

"4. It was the duty of Weller to look in both ways and listen for trains on the Belt line. And if at any time before he got on the track he could either by looking or listening have known of the approach of defendant's train, then he was bound to do so, and was negligent if he did not do so."

I. The evidence was all introduced by plaintiff, and is without conflict. The train inflicting the injury was within the limits of the city, and was being run at a rate of speed in excess of the rate limited by ordinance. This was an act of negligence which, if causing the injury, would authorize a recovery unless the husband of plaintiff was guilty of contributory negligence. There is no doubt the evidence tended to prove that deceased was negligent in going upon the track at the time and in the manner shown, but his act can not, as a matter of law, be declared negligent, unless the facts exclude every other reasonable inference. If inferences other than that of contributory negligence can be fairly drawn from the evidence, then the question becomes one of fact for the jury to decide.

Only one person who witnessed the casualty testified on the trial, and from his evidence, with the situation of the streets, railroad tracks, lights, and other

surroundings, we must determine whether the court should have taken the case from the jury. Collins, the witness, testified that he was at the time a gripman on one of the Fifteenth street cable cars on the south track, headed east. That it was the rule and custom to stop the cable cars about fifty feet from the Belt road track, and for the conductor to go forward, to see if the track was clear and a crossing safe. These cable cars had a brilliant headlight in front. His car had stopped as usual about fifty feet west of the railroad track. The cable car on the north track fronting west had stopped, and was standing on the east side of the railroad. While standing he heard the rumbling of a train coming down the track from the northeast. He could not then see it. About the same time he heard the rattling of a wagon about one hundred feet away, coming down the north side of Fifteenth street from the west. This wagon was driven by deceased, Mr. Weller. When Weller passed the cable car he was driving in a rapid trot, at a rate of six or seven miles an hour. When opposite the car, witness called to him to look out for the train. Weller evidently did not hear or understand, for he drove on without check. When within about twenty-five feet of the track witness shouted to him again to look out for the train. At this warning Weller turned his head, and looked over his right shoulder towards witness, but did not check his speed. Upon reaching the track the train struck him. Collins testified further that the night was dark, the street was hard, and the buggy rattled; the headlights from the two cable cars threw a bright light across the track; that he heard the bell on the engine ring feebly twice before the collision; that he saw no headlight, lamp or lantern in front of the train until about the time he called to Weller the second time. Weller did not look, so far as witness could see, in the direction

from which the train was coming, nor did he check the speed of his horse the least when he drove upon the track.

It was shown by the evidence,. as before stated, that the railroad track to the northeast—the direction from which the train came—was straight for six hundred feet, and upon an embankment, and the view was unobstructed, after Weller passed the buildings, though the bright light from the cable cars made it dark up the railroad track to one on the street, and Collins could not see the train until he called the second time to Weller, when he was within about twenty-five feet of the track.   The speed of the train, running with the hind end of the engine in front, was about twelve miles per hour, and when it came in sight was within about fifty feet of the point of the collision with the wagon. It was shown that Fifteenth street was the most direct and practicable route from the house of Weller to the business part of the city, but it was not shown how frequently it had been traveled by him.

The law that a traveler, before entering upon a railroad track, must observe some precautions for his own protection and safety, and that a failure to do so will be such negligence as will preclude a recovery in case of injury, is as well settled in this state as is the law that a railroad company is guilty of negligence in running a train without observing the reasonable precautions required by law or ordinance.  The measure of precaution to be observed by a traveler depends often upon the circumstances and surroundings.   The general rule is that in knowingly approaching the track of a railroad he must use his sense of sight or hearing to ascertain if there be danger.  If the view is so obstructed that he can not see, he should carefully listen.  The circumstances may not require that he both look and listen, but common prudence requires

that he do either the one or the other, and a failure to do so renders his act negligent in law.

In treating the question of the duty of a traveler to look and listen before attempting to cross the track of a railway, and the legal effect of a failure to perform his duty in that respect, Beach, in his work on Contributory Negligence [2 Ed.], section 180, reaches the following conclusion: "In the progress of the law in this behalf, the question of care at railway crossings as affecting the traveler, is no longer, as a rule, a question for the jury. The *quantum* of care is exactly prescribed as matter of law." If it appear from the evidence that the traveler did look or listen, or both, then it becomes a question for the jury to determine, considering the situation, the duty of the railroad company, and all the facts and circumstances in evidence, whether the precautions taken were reasonable. There are cases, also, in which one going upon a railroad track may show himself or be shown to have been so heedless of known danger as to preclude a recovery as a matter of law for injuries received through his own recklessness. In such case he assumes the risk of injury. These principles are established by numerous decisions of this court. *Zimmerman v. Railroad,* 71 Mo. 476; *Henze v. Railroad,* 71 Mo. 636; *Hanlon v. Railroad,* 104 Mo. 381; *Stepp v. Railroad,* 85 Mo. 235; *Easley v. Railroad,* 113 Mo. 236; *Kenney v. Railroad,* 105 Mo. 284; *Gratiot v. Railroad,* 116 Mo. 450; *Boyd v. Railroad,* 105 Mo. 371.

The question, then, arises on the demurrer to the evidence, whether deceased himself failed to exercise such reasonable care and to take such reasonable precaution as would preclude his widow from recovering damages on account of his death. It may be proper to say here, as was held in the *Bluedorn Case,* 108 Mo. 439, that where the evidence of negligence on the part of the railroad company, which resulted in an injury,

is clearly established, in order to defeat a recovery as a matter of law on the ground of contributory negligence, the defense should be clearly made out. In other words, to repeat and emphasize what has been said, if inferences other than that of contributory negligence may be fairly drawn from all the evidence and the facts and circumstances shown to exist, then the question becomes one of fact for the jury. The greatest difficulty in each case lies in the application of these principles to the facts of the particular case.

In this case only one witness to the conduct of the deceased testified. What he saw was necessarily from his point of observation. According to his testimony, he heard the rattling of the wagon driven by deceased for one hundred feet before it passed him, situated fifty feet from the track. He heard the wagon, then, before it passed the frame buildings. The horse was moving at a rapid trot, six or seven miles per hour, and its speed was not checked until the collision occurred. The wagon rattled on the hard ground so witness could hear it one hundred feet away. It is quite evident that plaintiff did not listen carefully or at all for a train. The witness had his eyes upon deceased from the time he passed him until he was struck. He was driving in the bright light thrown out by the headlights of the two cable cars, in full view of the witness, and, so far as he could see, never turned his head in the direction of the railroad track from which an approaching train might have been expected. Witness saw the train, with a light on its front end, when deceased, who was nearer, was within twenty-five feet of the track, but deceased gave no indications of seeing it himself.

We think it clearly and conclusively established that deceased did not look for the train, or use any kind of precaution to ascertain the approach of one

after he got within fifty feet of the track.  From the frame buildings to where the witness was situated was a distance of about sixty feet.  The view of the railroad track was unobstructed, and, except for the darkness, a train could have been seen for over six hundred feet. How plaintiff used his eyes passing over this part of the street, the evidence does not inform us.  If it had been shown by the evidence that, after coming from behind the buildings, plaintiff looked carefully up and along the track for a train, and could not see it on account of the neglect of the company to have a light placed in front as required by ordinance, we would say that the issue should have been left to the jury to say whether, under all the circumstances, the precaution taken was such as ordinary care demanded, or whether stopping and listening and approaching the track at a more moderate rate of speed was also required.

In the absence of all evidence, did the jury have a right to draw the inference that deceased did what common prudence and ordinary care demanded of him?  The rule of law that ordinary care requires a traveler at a railway crossing to look up and down the track, when the view is unobstructed, before venturing to cross it, is drawn from the ordinary conduct of the average of mankind in the daily affairs of life.  From the same source is deduced also a correlative rule that, in the absence of direct evidence or rebutting circumstances, one, in attempting to cross a railroad track, will be presumed to have been in the exercise of proper care.  *Petty v. Railroad*, 88 Mo. 320; *Schlereth v. Railroad*, 115 Mo. 87; *Crumpley v. Railroad*, 111 Mo. 158.  In this case, had there been no witness to the conduct of deceased, and it had been shown that defendant was negligent in failing to comply with the ordinance requiring the train to carry a light, then the jury might have drawn the inference that deceased

looked for a train, and failed to see on account of the default of those in charge of the train. In such case the question of contributory negligence would have been one for the jury, to be determined in the light of all the circumstances.

We are not able to see that the facts disclosed in this case call for the application of a different rule. If it had been shown that deceased, when he passed the frame buildings, having then a clear view of the track for six hundred feet, looked carefully up the track for a train, and saw no light or other indications that one was approaching, we could not say as a matter of law that he was guilty of negligence in driving the remaining fifty feet without again looking. If no train had in fact been within six hundred feet, no danger of collision would have appeared. The duty of deceased required him to look up and down the track for trains before crossing it. What more natural than that he should first look in the direction in which he could see? The cable car may have stood as an obstruction to his vision of the track to the southwest. When he heard the warning of Collins, if he had already looked in the other direction, what more natural than that, coming from behind the cable car, he should then turn his eyes upon the track to the southwest, which he did? But it is insisted that the train did in fact carry the light, which plaintiff could have seen had he looked. In answer to this we need only say that the evidence tended to show that no light was in front of the train until about the time deceased turned his head to the right. Whether one was there before that was also a question for the jury. We think, under all the evidence, the case was one for the jury, and the demurrer to the evidence was properly overruled.

II. Complaint is made to that part of the plaintiff's third instruction which tells the jury that

deceased "had a right to presume that the agents and servants of defendant in moving trains along said railroad track would use ordinary care, and he was not bound to anticipate or be prepared for any acts or omissions on their part declared by the court in plaintiff's instruction number 1 to be negligence." The omissions referred to were failure to ring the bell, failure to carry a light, and failure to run within a limited rate of speed. · The proposition that everyone is presumed to know and observe the law, and that persons on the streets of a city have a right to presume that a railway company will obey the commands of the state and municipal laws in running their trains, has been too often declared by this court to justify us in a further consideration on the ·question in the abstract. *O' Connor v. Railroad*, 94 Mo. 150, and cases cited; *Kellny v. Railroad*, 101 Mo. 78; *Kenney v. Railroad*, 105 Mo. 270.

The plea was contributory negligence. The evidence tended to show—indeed, it was almost conclusive —that deceased drove recklessly on the track, without the observance of any of the requirements of ordinary care. Under this plea and the evidence, was plaintiff entitled to the instruction? If deceased had the right to invoke the presumption, and was not bound to anticipate or be prepared for any act or omission on the part of defendant, what became of the plea of contributory negligence? While it is undoubtedly the law in this state, that a railroad company is negligent *per se* in operating its trains upon streets in disregard of statutory or municipal regulations, and also that one using such highways has the right to assume that such regulations will be observed, he is not for that reason to shut his eyes and close his ears to their nonobservance. Railroad tracks are places of danger, though trains are run under the most careful observance of

the strictest regulation; and the duty rests upon a traveler, on approaching a track, to use reasonable care to ascertain if there be danger. If he use such reasonable precaution for his own safety as the law or common prudence enjoins, he has the right, in the absence of information to the contrary, in determining whether the way is open and safe, to rely upon the presumption that the corporation will perform its duty, and observe the precautions imposed upon it. *Sullivan v. Railroad*, 117 Mo. 214; *Jennings v. Railroad*, 112 Mo. 268; *Lynch v. Railroad*, 112 Mo. 420; *Crumpley v. Railroad*, 111 Mo. 152.

The traveler has no right to rely wholly upon the obligations of the company to observe the requirements of law and proper care, while he himself is disregarding both. The rule of contributory negligence is not changed or abrogated by reason of a statute or ordinance imposing the duty on account of a violation of which the injury resulted. *Turner v. Railroad*, 74 Mo. 602; *Zimmerman v. Railroad*, 71 Mo. 476; *Hanlon v. Railroad*, 104 Mo. 381; *Crumpley v. Railroad, supra.* "The statute does not absolve persons approaching a public railway crossing, from exercising common prudence to avoid danger, nor shift the responsibility to another, should injury ensue from a failure to exercise it." *Kenney v. Railroad*, 105 Mo. 284.

There was evidence from which the jury could have found that plaintiff both saw and heard the approaching train, and knew it was not observing the law. With such information they are told that deceased was not, in the exercise of due care, required to take precautions to avoid the result of such negligent omissions. The jury may well have inferred that the duty of looking for a train, the omission of which they were told by defendant's instructions would be contributory negligence, did not apply in case defendant

was omitting a duty imposed by an ordinance. Indeed, the instructions are only reconcilable on that theory. A similar instruction was condemned in the recent case of *Lynch v. Railroad, supra.* We think, also, that the question of contributory negligence should have been left to the jury upon all the evidence, without giving prominence to a presumption which deceased may or may not have indulged. Under the evidence, the instruction was improper.

III. The impropriety of the admission of evidence over the defendant's objection, giving the relationship of plaintiff to other persons, will occur to the court on a retrial. The damages recoverable under the statute do not depend in the least upon the social or business standing or relationship of the widow of one who lost his life by the negligent operation of a train. The amount of damage is fixed in such cases at $5,000.

IV. On the trial, defendant offered to read in evidence an ordinance of the city, which provided that no person within the city should drive any animal in any street faster than a moderate gait, or should drive any such animal in such a manner as to come into collision with or strike any other object or person. The court refused to permit the ordinance to be read, and of its action defendant complains, and we think justly. There was a plea of contributory negligence. The ordinance was offered to support that plea. If the horse was being driven by the deceased faster than a moderate gait when the collision occurred, the act would have been negligent; and, if it contributed directly to the injury, would bar a recovery. The rule in this state is well settled that the violation by a railroad company of an ordinance limiting the rate of speed of a train is negligence *per se. Weber v. Railroad,* 100 Mo. 194, and cases cited. No reason can be

perceived for a distinction in favor of one driving a horse in violation of law, instead of an engine. Both acts are alike prohibited. Shearman and Redfield, in their work on negligence (section 13), say: "The violation of any statutory or valid municipal regulation, established for the purpose of protecting persons or property from injury, is of itself sufficient to prove such a breach of duty as will sustain a private action for negligence, if the other elements of actionable negligence concur." They illustrate the proposition by reference to a statute or ordinance regulating the speed of vehicles, horses or trains.

It is true the ordinance does not fix a speed that would be immoderate, but that fact does not affect its admissibility as evidence. In the absence of an ordinance, no rate of speed, however immoderate, would, in itself, as a matter of law, be negligent. It is so held in this state in respect to the movement of railroad trains (*Maher v. Railroad*, 64 Mo. 276; *Wallace v. Railroad*, 74 Mo. 594,) and in other states of riding and driving (*Brennan v. Town of Friendship*, 67 Wis. 223; *Carter v. Chambers*, 79 Ala. 223; *Crocker v. Ice Co.*, 92 N. Y. 652). If the gait at which Weller was driving was not moderate, then, under the ordinance, his act would be pronounced negligent in law. Without the ordinance, though the driving was found not to have been moderate, still the jury may have found it at the same time not to have been negligent. Immoderate or rapid driving, with no ordinance, is negligent or not, owing to circumstances. Immoderate driving, with the ordinance in force, is negligent under all circumstances. In the first case the jury find from all the circumstances whether the act was negligent, while in the second it finds whether the driving was moderate. In the circumstances shown in one case this court held that it was the duty of both parties "to drive at a ·

moderate rate on the streets." *Schaabs v. Wheel Co.,* 56 Mo. 176. Ordinarily it would be for the jury to say whether the driving was negligent, not whether it was moderate. The question in that case was left to the jury to determine whether the driving was negligent, and the remark of the judge was outside of any issue presented by the record.

A similar question was recently decided by the supreme court of Connecticut. The horses of two persons being driven in opposite directions ran together, and that belonging to plaintiff was killed. The action was based upon a statute requiring persons meeting in the highway each to turn to the right and slacken his pace. Defendant pleaded contributory negligence, and on the trial read in evidence an ordinance prohibiting any one in the city from driving at a faster rate than "an ordinary trot or six miles an hour." Defendant requested the court to instruct that, if plaintiff was not obeying the ordinance at the time of the accident, such unlawful act, if it directly contributed to the damage, was a conclusive bar to plaintiff's recovery. This the court refused. The supreme court, after a careful examination of the questions, held that the instruction should have been given as asked. The court sums up the result of the investigation as follows: "In every case which we have been able to examine, where it appears that disobedience to the law directly contributed to the injury, it has been accepted as a perfect defense." *Broschart v. Tuttle,* 59 Conn. 8. See, also, *Newcomb v. Protective Department,* 146 Mass. 600; Shear. & R. Neg., section 646. While one is transgressing the law, he should not be permitted to claim indemnity for an injury from the wrongful act of another, to which his own transgression contributed.

On account of the errors indicated the judgment is reversed, and the cause remanded for a new trial.

All concur; BRACE, J., not agreeing to what is said in the second paragraph.

### ON REHEARING.

PER CURIAM.—After again hearing and considering able arguments made by counsel on each side of this case, we still remain of the same opinion as before, consequently the judgment will be reversed and the cause remanded for a new trial. BLACK, C. J., BRACE, BARCLAY and MACFARLANE, JJ., concurring.