[No. 13717. Department One. September 22, 1917.]

ADAMS H. BULLIS, *Respondent*, v. W. J. BALL *et al.*, *Appellants*.[1]

MUNICIPAL CORPORATIONS—USE OF STREETS—COLLISION AT CROSSING—NEGLIGENCE—LAST CLEAR CHANCE. There is no room for the application of the doctrine of last clear chance where a collision at a street intersection between an automobile and a motorcycle occurred instantaneously and the jury found that the defendant could not have avoided the accident after he actually saw the plaintiff's perilous position.

TRIAL—VERDICT—SPECIAL FINDINGS—CONSTRUCTION. In an action for personal injuries sustained in an automobile collision where no instructions were requested or given with reference to the defendant's duty to be upon the lookout for or to observe the plaintiff, and an instruction upon the doctrine of last clear chance was given without that feature, and not excepted to, it becomes the law of the case, and a special finding that the defendant could not have stopped the automobile after he actually saw the plaintiff, under the instruction given, controls a general verdict for the plaintiff based upon the doctrine of last clear chance.

MUNICIPAL CORPORATIONS—USE OF STREETS—ACCIDENT AT CROSSINGS—NEGLIGENCE—VIOLATION OF ORDINANCE. A verdict for personal injuries sustained in an automobile collision cannot be based upon the defendant's failure to observe a city ordinance requiring him to

[1]Reported in 167 Pac. 942.

drive as near the right-hand curb as possible, where his position in the center of the street merely enabled the parties to see each other sooner, and had no causal connection with the accident.

SAME—USE OF STREETS—ACCIDENT AT CROSSINGS — CONTRIBUTORY NEGLIGENCE. A motorcyclist is guilty of contributory negligence precluding recovery for a collision with an automobile at a street intersection, where the city ordinance provided that vehicles going in a northerly or southerly direction shall have the right of way, that he approached the intersection running westerly, saw the automobile driven southerly about to enter the intersection, and having made a miscalculation of distance or speed, suddenly turned his motorcycle, when it skidded, and he fell in the path of the automobile.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 10, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained through a collision with an automobile. Reversed.

*Harry L. Cohn* and *Plummer & Lavin*, for appellants.

*Tustin & Chandler*, for respondent.

WEBSTER, J.—This is an action to recover damages for personal injuries, alleged to have been sustained in a collision between an automobile and a motorcycle in the city of Spokane. The facts necessary to an understanding of this opinion are as follows: On February 27, 1916, the defendant W. J. Ball, who was engaged in the business of selling automobiles, was demonstrating to a prospective purchaser a six-cylinder Studebaker machine. The purpose of the demonstration was to show the power of the engine in climbing a hill on high gear without increasing the momentum of the car before reaching the beginning of the incline upon which the demonstration was being given, and also without increasing the speed of the machine while in the act of ascending the hill. The complaint sets forth the negligence of the defendant in the following language:

"That on or about the 27th day of February, A. D. 1916, said defendant W. J. Ball, at about the hour of between two

and two-thirty p. m. of said day, was demonstrating a high power automobile of Studebaker make, having with him in his automobile at said time a prospective purchaser; that said defendant ran his automobile south on Maple street in the city of Spokane, county of Spokane, state of Washington, and at or about a distance of two or three blocks north of the intersection of said Maple street and Sixth avenue said defendant negligently increased the speed of his automobile to a rate of between 25 and 35 miles per hour, and maintained said rate of speed from said time on until the automobile which he owned and was driving ran into and injured plaintiff at the intersection of said Maple street and Sixth avenue, said injuries being more particularly described hereinafter in this complaint; that at the time and place aforesaid, while plaintiff was riding on his motorcycle going east on Sixth avenue and while crossing said Maple street at the intersection, said defendant W. J. Ball came from the north on said Maple street at a great and excessive rate of speed, to wit, between 25 and 35 miles per hour, and so negligently and carelessly operated his said machine at said time and place that plaintiff was run over by the automobile being driven by said defendant; that said defendant failed to give any signal or warning whatsoever of his approach or to apply his brakes, and did not slacken the speed of his car until after it had passed over and beyond the said plaintiff; that said defendant at the time and place of the injury to plaintiff hereinbefore referred to was driving his automobile in a careless and negligent manner and in violation of ordinance No. C1832 of the city of Spokane, the title of said ordinance being as follows: 'Ordinance No. C1832. An ordinance regulating the traffic of the streets of the city of Spokane, Washington,' passed by the city council November 30, 1914; that said defendant violated §§ 18 and 19 thereof. Reference is hereby made to said ordinance and pleaded herein to the same extent as though set out verbatim in this complaint."

Sections 18 and 19 of the ordinance, referred to in the complaint, are as follows:

"Sec. 18. No vehicle shall travel at a speed faster than fifteen (15) miles an hour when inside the fire limits, nor faster than twenty (20) miles an hour when outside the fire limits.

"Sec. 19. No vehicle shall be operated or moved at a speed greater than is reasonable and proper, having regard for the traffic and use of the way by others, or so as to endanger the life or limb of any person." Ordinance No. C1832.

Subsequently the complaint was amended by alleging the violation of § 24 of the same ordinance, which reads as follows:

"A vehicle except when passing a vehicle ahead shall habitually keep as near the right hand curb as possible."

The street intersection at which the collision occurred is at Sixth avenue and Maple street, and is outside of the fire district of the city of Spokane. Between Fifth avenue and Sixth avenue, Maple street is on an ascent of approximately five per cent, and between Sixth avenue and Seventh avenue runs abruptly up grade. From the alley, which intersects the block between Fifth avenue and Sixth avenue on Maple street on the west side of the street, there is practically no obstruction to the view of one riding east on Sixth avenue, nor to one approaching Sixth avenue in a southerly direction on Maple street. So that there is an unobstructed view between the buildings on Maple street at the alley and the intersection for a distance of about one hundred and forty feet. As defendant's automobile approached Sixth avenue on Maple street, going in a southerly direction, the plaintiff with his wife was riding a motorcycle in an easterly direction on Sixth avenue toward Maple street. At the intersection of the two thoroughfares, a collision occurred between the automobile and the motorcycle, resulting in the death of Mrs. Bullis and the severe injury of the plaintiff. This action in damages was subsequently instituted by the plaintiff, the driver of the motorcycle.

After instructing the jury as to the law of the case, the trial court submitted several special interrogatories, which, with the answers returned by the jury, are as follows:

"(1) At what speed was plaintiff going on the motorcycle as he entered the intersection of Maple street with Sixth avenue? Ans. Twenty miles per hour.

"(2) Was that speed reasonable under all the circumstances then shown to exist? Ans. Yes.

"(3) At what speed was defendant going with the automobile as he entered the intersection of Sixth avenue with Maple street? Ans. Twenty miles per hour.

"(4) Was that speed reasonable under all the circumstances then shown to exist? Ans. Yes.

"(5) Did the motorcycle skid and fall before it was struck by the automobile? Ans. Yes.

"(6) After the defendant in the automobile actually saw the plaintiff on the motorcycle, could defendant have stopped his automobile before striking plaintiff's motorcycle? Ans. No."

The jury returned a general verdict in favor of the plaintiff, assessing his damages in the sum of $3,000. Defendant made a motion for judgment notwithstanding the verdict, which was denied, and this appeal followed.

The jury, by its special findings, having absolved defendant from all charges of negligence growing out of his alleged violation of §§ 18 and 19 of the ordinance referred to in the complaint, the case presents two questions for consideration. They are, (1) can the general verdict be sustained under the doctrine of the last clear chance; (2) was defendant's violation of § 24 of the ordinance, requiring him to drive his automobile as near the right-hand curb as possible, a sufficient foundation upon which the verdict can rest.

Under the first proposition we shall consider plaintiff's contention that, notwithstanding the special findings of the jury, the case admits of the application of the last clear chance doctrine, and that the verdict can be soundly upheld upon that theory. We are unable to subscribe to this view, for two reasons: (a) the record under consideration shows beyond question that the accident occurred instantaneously, and, therefore, there was no last clear chance to avoid the injury open to the defendant; and (b) the jury, by its answer

to special interrogatory No. 6, found that the defendant could not have avoided the accident after he actually saw the plaintiff's perilous situation.   We shall not elaborate upon the first reason further than to say that the case falls square-ly within the rule recently announced by this court in the case of *Hartley v. Lasater*, 96 Wash. 407, 165 Pac. 106. Counsel for plaintiff, however, contend that the finding of the jury to the effect that the defendant, after he actually saw plaintiff, could not have avoided the accident does not control the general verdict, for the reason that it is not sufficiently broad to cover all aspects of the last clear chance rule.   It is urged that the special finding makes no mention of when the defendant, in the exercise of reasonable care, ought to have seen the plaintiff, and that defendant's failure to see plaintiff before the time that he actually did see him is an act of negli-gence upon which the verdict of the jury may be predicated. This contention would have merit had this phase of the last clear chance rule been submitted to the jury by the instruc-tions of the court.   But, in view of the record in this case, the position clearly is untenable.   The instruction on the last clear chance doctrine is as follows:

"I instruct you that the law of last clear chance as ap-plied to this case is that, where a defendant in operating an agency of danger is confronted with a perilous situation which is brought about by the negligence of the plaintiff, but notwithstanding said negligence of the plaintiff the defend-ant could, by the use of reasonable precaution have prevented said injury, then in that event the law requires him to take advantage of the last clear chance to prevent an injury, and in this connection I instruct you that, if you find from the evi-dence that as the defendant was journeying south on Maple street and the motorcycle driven by the plaintiff came across his path, and by the exercise of reasonable diligence and cau-tion he could have brought his machine to a stop and avoided the injury, that the law imposed this obligation upon him to do so under the law of the last clear chance, and in the event that he did not use that precaution, then and in that event I instruct you that your verdict should be for the plaintiff."

It will be seen that there is no reference in this instruction to the duty devolving on the defendant to be on the lookout for or to observe the plaintiff. The jury was limited in its deliberations to the question of whether the defendant, after plaintiff's motorcycle came across his path, could, by the exercise of reasonable diligence, have brought his automobile to a stop and thus have avoided the injury. That, generally speaking, there may be two elements of duty arising out of the last clear chance rule resting upon a defendant in a situation such as is presented in this case, cannot be seriously questioned. The first duty is to exercise reasonable care in looking out for vehicles approaching the street crossing on the intersecting street, and the second duty is to exercise reasonable care and caution to prevent the accident after actually seeing the approaching vehicle. It was with the latter phase of the doctrine only that the trial court dealt in its instructions to the jury. At no place in the charge is the duty of the defendant to be on the alert to observe the plaintiff before he actually saw him defined or explained to the jury. That question was not embodied in the instructions. Whether the trial court through oversight failed to instruct upon this branch of the doctrine, or intentionally omitted to do so because the evidence in the case did not warrant the consideration of this phase of the rule, is immaterial at this time. No exception was taken to the instruction by the plaintiff, nor did he ask for or submit to the court an instruction embodying this aspect of the case. The instructions as given, therefore, constitute the law of the case. *Dyer v. Middle Kittitas Irr. District.*, 40 Wash. 238, 82 Pac. 301; *Sexsmith v. Brown*, 61 Wash. 164, 112 Pac. 337.

The special interrogatory submitted by the court covered the only portion of the last clear chance doctrine included in the instructions, and was expressly confined to the one question, viz., could the defendant have brought his machine to a stop after he actually saw the plaintiff's dangerous situation and thus have avoided the collision. The jury answered this

question in the negative, and this answer resolved in favor of the defendant the only aspect of the last clear chance rule submitted to the consideration of the jury. To sustain the general verdict upon the theory that the defendant was guilty of culpable negligence in failing to discover the plaintiff's exposed situation of peril sooner than he actually did discover it would require us to assume that the jury found in favor of plaintiff upon an issue which was not submitted to it and which, therefore, was not properly before it for consideration, and this despite the fact that the jury found in favor of the defendant on a kindred question which was properly before the jury for its determination. It seems obvious that the verdict cannot be sustained under the doctrine of the last clear chance.

This brings us to a consideration of the second question in the case: Did defendant's failure to drive his automobile as near the west curb as possible, in compliance with § 24 of ordinance C1832 of the city of Spokane, operate as an act of negligence upon which the verdict can soundly rest. If it did, the verdict of the jury cannot be disturbed, for it is an elementary rule of law that, where the general verdict is not irreconcilably inconsistent with the special findings, it must be permitted to stand, and this phase of the case is not covered by the special findings. Assuming that § 24 of the ordinance, requiring the driver to keep his vehicle as near the right-hand curb as possible, applies to street intersections, and that the defendant, upon the occasion in question, failed to observe the ordinance in this respect and hence was guilty of negligence, it seems too plain for argument that there was absolutely no causal connection between the act of negligence growing out of the violation of the ordinance and the collision. Clearly this negligence was not the proximate cause of the injury.

Defendant's position near the center of the street, in this as in practically every similar instance, would not only enable the plaintiff to discover his presence sooner than he could

have done had defendant been as near the right-hand curb as possible, but it afforded plaintiff, whose duty it was to do so, additional space in which to slacken his speed or to stop his motorcycle, if necessary in order to prevent the collision. The lower court's instruction upon this phase of the case was couched in the following language:

"The ordinance requiring the driver to keep as near the right hand curb as possible is to be interpreted reasonably. It does not mean that the driver must literally hug the right hand curb, but he should keep as near as reasonably possible considering all the circumstances then existing. If the defendant was not as near the right-hand curb as reasonably possible at the time the collision occurred and this fact caused or contributed to the collision and the collision would not have happened if he had been as near the right-hand curb as reasonably possible, then the defendant would be guilty of negligence in this case and would be liable to plaintiff in damages."

This instruction, in the abstract, embodies a fair and clear statement of the law. But the case at bar presents a rather peculiar and unique situation, viz.: A plaintiff who testifies that he saw the defendant violating the ordinance by driving near the center of the street, and who, at the same time, claims the benefit of the ordinance by saying that he thought the defendant would drive on the right-hand side of the street as near the curb as possible. Plaintiff testified that he saw defendant about eighteen feet north of the north intersection line of the street, and that he then noticed the defendant's position near the center of the street. Notwithstanding this, according to his own testimony, he attempted to cross the street in front of the defendant, evidently thinking that he had time in which to do so safely. Finding this impossible, he attempted to turn his motorcycle up the hill, when, as the jury found, it skidded and fell before being struck by defendant's automobile. The question arises, how could plaintiff have expected the defendant to observe the ordinance by driving on the right-hand side of the street, when he saw

that the defendant was at the very moment violating the ordinance by driving near the center of the street. It is inconsistent with both reason and common sense to permit plaintiff to say that, although he knew that defendant was guilty of negligence in violating the ordinance, he considered himself safe in assuming that defendant would obey the ordinance and be in that portion of the street which the ordinance provided he should occupy. To uphold such a position would be permitting plaintiff successfully to say that he expected defendant to be in two places at the same instant.

A brief review of the principal authorities cited by plaintiff's counsel in support of the verdict upon the ground of negligence growing out of the violation of § 24 will show that, although they enunciate a correct general rule of law, the relative positions of the parties to the accident in those cases were quite different from the situation of the litigants in the case before us. Particular stress is laid upon the case of *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943. In that case the plaintiff, who was crossing a street with a sack of grain on his shoulder, looked for approaching vehicles as he stepped off the sidewalk. Seeing none he continued toward the opposite side of the street. When he had reached the car tracks in the middle of the street, he was struck by the defendant's truck. The plaintiff was where he had a right to be, and the defendant's truck, in violation of the identical ordinance here under consideration, was in the middle of the street instead of near the right-hand curb. Had the truck been driven in compliance with the ordinance, as the plaintiff, in the absence of knowledge to the contrary, had the right to assume it would be, the accident could not have occurred. In *Hiscock v. Phinney*, 81 Wash. 117, 142 Pac. 461, Ann. Cas. 1916E 1044, a case arising in the city of Seattle, an ordinance similar to the one under discussion was involved. There a boy riding a bicycle collided with defendant's automobile, which was being driven in the middle of the street and not upon the right hand-side as the

ordinance provided.  The accident occurred at the jointure of two streets where a high bank and shrubbery prevented either party from seeing the other until a moment before the accident.  The court held that the boy was where he had a right to be and that the driver of the automobile was not. But in this case, also, the plaintiff did not observe the defendant's violation of the ordinance and his consequent negligence.  He acted upon an assumption in faith of a law which justified him in so doing.

With these observations in mind, let us approach the consideration of the ordinance of the city of Spokane, which was introduced in evidence, providing that vehicles going in a northerly or southerly direction shall have the right of way except where traffic officers are stationed.  It is conceded that there were no traffic officers at the intersection of Sixth avenue and Maple street.  Maple street, upon which defendant was driving, runs northerly and southerly, while Sixth avenue, the street upon which plaintiff was riding the motorcycle, runs easterly and westerly.  The situation, therefore, of the parties was this: Defendant was driving his automobile at a lawful rate of speed across a street intersection over which he had a prior right of way.  Plaintiff was driving his motorcycle upon a street running east and west over an intersection upon which he had an inferior right of way to that of the defendant.  His duty, knowledge of which he is presumed to have had, was to slow down at the intersection of the streets, look for any approaching vehicle on Maple street, and to give such vehicle, should it be within a reasonable distance of the intersection, the right to cross in front of him. The jury found that plaintiff proceeded to cross the intersection at the same rate of speed as that at which defendant was approaching, viz., twenty miles per hour.  Clearly here was a violation of duty on the part of the plaintiff.  He knew that defendant had the right of way on Maple street and that he was only eighteen feet from the line of intersection of the streets, and yet plaintiff attempted to cross the street in front

of defendant's automobile. The ordinance placed the duty upon plaintiff to apprehend defendant at the intersection, before it imposed upon defendant the duty to see the plaintiff. The purpose of the ordinance giving to vehicles moving in a northerly or southerly direction the right of way at street intersections was to prevent collisions, to obviate the very exigency which here arose. It was foreseen that at some time vehicles approaching street intersections would very probably meet and collide. To prevent this, the ordinance above referred to was enacted. Its purpose demands no explanation. It is quite clear. The rights and duties which it creates are equally clear. The driver on the street running north and south must exercise that degree of care which is ordinarily commensurate with the safety and welfare of others with whom he may come in contact at street intersections. But while it is true that he must exercise ordinary care, the superior right to passage over the intersection is his. It is a right expressly conferred upon him by authoritative enactment, a right which must be observed and respected by others using streets at the points of intersection. This priority of right naturally and necessarily creates a corresponding duty on the part of the traveler using the street running east and west, a duty which consists in the exercise of a degree of care commensurate with the superior right of the person traveling the street running north and south. The duty necessarily implies that the driver of a vehicle on a street running east and west shall slacken speed for the purpose of observing vehicles approaching the intersection on the street running north and south, and should such vehicles be within a reasonable distance of the intersection, to wait until they have passed before attempting to continue across the intersection. The greater duty and the higher degree of care to be observed in such a situation is upon the person using the easterly and westerly street, if the ordinance in question is to be given any meaning, and any violation of this duty by the

12—98 WASH.

person injured which contributes in an appreciable degree to causing the collision in which his injuries are sustained will operate as a bar to his recovery.

"If the person injured was at the time of receiving the injury doing some act in violation of a statute, or ordinance, such person cannot recover if such violation contributed to the injury, the violation amounting to contributory negligence." 29 Cyc. 525.

"If the plaintiff is acting in violation of a statute or ordinance at the time of the accident, and such violation approximately contributes to his injury, he is guilty of contributory fault, and is as much debarred from recovery as in other cases of contributory negligence." Shearman & Redfield, Law of Negligence (6th ed.) § 104.

See, also, *Weller v. Chicago, M. & St. P. R. Co.,* 120 Mo. 635, 23 S. W. 1061, 25 S. W. 532.

Plaintiff attempted to cross the intersection in front of the defendant's automobile, notwithstanding he saw it traveling in a southerly direction and about to enter the intersection. He found that he had made a miscalculation of speed or distance or both, and suddenly and violently turned his motorcycle up the hill in order to avoid colliding with the defendant. In doing this his machine skidded and fell, throwing him in the path of defendant's oncoming machine. In view of the special findings of the jury and the plaintiff's own version of the accident, the conclusion is irresistible that the proximate cause of the collision was plaintiff's contributory negligence. To reach a different conclusion would necessitate ignoring the special findings, which clearly cannot be done.

The judgment of the lower court will be reversed, and the cause remanded with direction to enter judgment in favor of the defendant.

ELLIS, C. J., CHADWICK, MAIN, and MORRIS, JJ., concur.