ROBERT GRUNDSTROM v. HENRY DWORSHAK, JR.[1]

June 19, 1925.

No. 24,644.

**Questions of negligence of rider and driver for jury.**

Defendant had the right of way, but notwithstanding he stopped his automobile after getting half way across a street intersection to allow plaintiff's motorcycle to pass in front of him. Plaintiff saw defendant's car when 120 feet away, and that it had stopped when 25 feet distant. The collision occurred in plaintiff's effort to turn to the left to pass in front of defendant's car. Both questions, that

[1] Reported in 204 N. W. 525.

of defendant's negligence and plaintiff's contributory negligence, *held* to have been for the jury.

1. See Motor Vehicles, 28 Cyc. p. 49.

---

1. See note in 28 L. R. A. (N. S.) 944; 2 R. C. L. p. 1187.

Action in the district court for St. Louis county. The case was tried before Fesler, J., and a jury which returned a verdict in favor of plaintiff. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Abbott, MacPherran, Dancer, Gilbert & Doan,* for appellant.

*A. G. McKnight* and *Roderick Dunn,* for respondent.

STONE, J.

This is a personal injury action arising out of a street intersection collision between a motorcycle ridden by plaintiff and a touring car operated by defendant. After verdict for plaintiff, defendant appeals from the order denying his motion for judgment notwithstanding or a new trial.

Twenty-third avenue in Duluth ends on Superior street. The northeast corner is practically "blind," rendered so by an ornamental iron fence and shrubbery. Defendant was driving his car at a moderate rate of speed southerly on Twenty-third avenue intending to turn east on Superior street. Just as he passed the curb line, he saw plaintiff approaching from the east and about half a block away. In that situation, he had the statutory right of way as against plaintiff. Notwithstanding that and when the front of his machine had gotten near the middle of Superior street, he stopped to permit plaintiff, whose approach he had observed, to pass in front of his car. The result was to block the north side of Superior street, for the time being. West bound traffic, if any, would have had to stop or turn to its left and pass in front of defendant's car, there being no room to pass behind and between it and the curb.

Plaintiff's account of the movements just before the collision is this:

"As I was coming west on Superior street, why, I seen a car coming down the avenue; it is a blind corner there, you can't see until you get right onto the corner, and the car turned out at a pretty good rate of speed—I couldn't say just what rate he was coming, and he drove right out, and I should judge that he would keep on going, and he stopped—I planned keeping to my right, and drove right through there, and he stopped, I slacked up all I could, and I swung over to the left to try and avoid an accident."

But plaintiff didn't slack up enough nor turn far enough to his left to avoid running into the left front wheel and fender of defendant's car, which he said had been stopped "four or five seconds" before the collision. He had first seen it when he was "somewhere around" 120 feet away. He says that defendant came onto the intersection at about 12 miles per hour and that he, himself, was "going about 15 or 20 miles," at which speed he says he could have stopped his motorcycle in from 50 to 75 feet. The pavement was asphalt and dry. At the moment of impact, plaintiff was still going, so he thought, 12 miles an hour. There was still a distance of 25 feet between the vehicles when plaintiff realized that defendant had stopped and that he would have to turn to the left or stop to avoid a collision.

We attach no importance to plaintiff's statement that defendant's car was stopped for possibly five seconds before the collision. Such estimates under such circumstances, are notoriously prone to error. But plaintiff's statement that defendant's car was first observed "around 120" feet away and was still 25 feet distant when it stopped, directly in front of plaintiff, must be taken as true. (The 25 foot distance was confirmed by plaintiff's likening it to a 30 foot distance in the court-room).

Although defendant was making every effort to be careful, we feel that the question of his negligence was for the jury. True, he had the right of way, but it was for the consideration of the jury whether he exercised due care in stopping after having gotten half way over the street. The question is one of fact.

Consideration of plaintiff's conduct has given us more difficulty. His was the inferior right of way. The priority of defendant's right

imposed a "corresponding duty" on plaintiff to exercise "a degree of care commensurate with the superior right" of defendant, to observe defendant's car, its speed, position and operation and to wait until it had passed "before attempting to cross the intersection." The more exacting duty in such a situation attends the inferior right. Bullis v. Ball, 98 Wash. 342 (353), 167 Pac. 942, quoted with approval in Kinney v. King, 47 Cal. App. 390, 190 Pac. 834. There is no doubt but that is the rule. The difficulty arises in its application. And here it is considered that the question of whether plaintiff, in the situation created by defendant's sudden stop, unexpected by plaintiff, exercised the degree of care required of him, was for the jury. That leads to an affirmance.

Personally, I am inclined to question the refusal to hold plaintiff guilty of contributory negligence as a matter of law. If his was due care, how came it he was not in a position to avoid running into a car which had a right of way superior to his own? True, motorists should not block street intersections. They ought to get out of the way of others as speedily as circumstances will permit. Plaintiff had a right to assume that defendant, having started to cross the street, would continue. Notwithstanding all of that, plaintiff's inferior right of way imposed upon him, under the circumstances of this case, the duty of observing defendant's movements and to govern his own accordingly, stopping, if necessary, in order to permit defendant to get out of the way. I cannot see sufficient excuse for plaintiff's running into a car having a right of way superior to his own and which he had first seen when 120 feet away. It does seem to me that he was taking one of those "close chances" so properly condemned in Gibbs v. Almstrom, 145 Minn. 35, 176 N. W. 173, 11 A. L. R. 227, and Anderson v. A. E. Jenney Motor Co. 150 Minn. 358, 185 N. W. 378.

Order affirmed.

STONE, J. dissents.
QUINN, J.
I also dissent.