[No. 16093.  Department One.  November 23, 1920.]

MARVIN BURLIE, *Appellant*, v. FRED STEPHENS *et al.*,
*Respondents.*[1]

MUNICIPAL CORPORATIONS (384)—USE OF STREETS—COLLISION AT
CROSSING—NEGLIGENCE—LAST CLEAR CHANCE. The doctrine of last
clear chance has no application where a boy, on the wrong side of
the street, suddenly and unexpectedly turned in front of an auto-
mobile that had been forced to turn to the left to avoid him; since
he created instantaneously a dangerous situation without any ap-
preciable lapse of time to avoid it.

SAME (381, 392)—VIOLATION OF SPEED ORDINANCE—INSTRUCTIONS.
In an action for personal injuries sustained by a boy who suddenly
turned directly in front of an automobile, it is proper to instruct
the jury that they should disregard the matter of the speed of the
car, when it appears that the rate of speed could have had nothing
to do with the accident.

SAME (379, 392)—VIOLATION OF ORDINANCE—NEGLIGENCE—INSTRUC-
TIONS. In an action for personal injuries sustained in an automo-
bile collision, it is proper to instruct that violation of an ordinance
requiring automobiles to turn to the right does not constitute negli-
gence, if it was done in an emergency to avoid collision, and that
it was for the jury to determine whether it was negligence proxi-
mately causing the accident.

MUNICIPAL CORPORATIONS (383, 392)—CONTRIBUTORY NEGLIGENCE—
INSTRUCTIONS. In an action for personal injuries sustained by a boy
who suddenly turned directly in front of an automobile, it is proper
to· instruct that it was the duty of plaintiff to use his senses and
observe other traffic and that he could not recover if he could have
seen the approach of the automobile and had ample room to pass
it and might have avoided the accident by the exercise of ordinary
care.

SAME (381)—VIOLATION OF SPEED ORDINANCE—INSTRUCTION. In
such an action, it is proper to refuse to instruct the jury that it
was unlawful for an automobile at a city street intersection to ex-
ceed four miles per hour, where the question of speed had nothing
to do with the accident.

APPEAL (272)—RECORD—STATEMENT OF FACTS—AFFIDAVIT. Affida-
vits used on a motion for a new trial cannot be considered on appeal
when not made a part of the bill of exceptions or statement of facts.

[1]Reported in 193 Pac. 684.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered January 17, 1920, upon the verdict of a jury rendered in favor of the defendant, in an action for personal injuries sustained by a minor struck by an automobile. Affirmed.

*C. E. Stevens* and *Chas. A. Wallace,* for appellant.
*Ellis & Evans,* for respondents.

BRIDGES, J.—Suit for personal injuries. The appellant is the guardian *ad litem* of Marvin Burlie. As such he instituted this action against the respondent for the purpose of recovering damages because of injuries to Marvin Burlie, who, at the time of receiving such injuries, was twelve years of age. The facts are substantially as follows: The injury occurred at the intersection of J and South 18th streets, in the city of Tacoma. One Forrest Ligman, at the time of the injury, was, and for a long time prior thereto had been, driving a Ford motor delivery truck or carriage for the respondents. Immediately prior to the accident, he had made certain deliveries two or three blocks south of the intersection in question, and was on his way northerly on J street. When he was about one hundred feet from the intersection of J and 18th streets, he saw Marvin Burlie coming towards him and going south on J street, on roller skates. At that time the boy was about one hundred feet north of the intersection of J and 18th streets, being about the same distance north as the automobile was south of that point. Ligman was driving his automobile on his right-hand side of the street some few feet from the curb, and the boy was on the same side of the street, to-wit, Ligman's right-hand side, or the boy's left-hand side. Ligman sounded his horn, but the boy did not change his course. Thereupon Ligman turned some-

what away from his right-hand curb and towards the center of the street, with the view of allowing the boy to pass between his automobile and his right-hand curb. The automobile and the boy each continued in practically a straight line to near the intersection of the streets. Had they so continued through the intersection there would have been plenty of room between the automobile and the right-hand curb for the boy to pass. It appears that each, the automobile and the boy, reached the intersection of the street at about the same time, and each must therefore have been traveling at about the same speed as the other. When the automobile reached the intersection, it was on the right-hand side of J street but somewhat near the center thereof. Just as they were in the act of meeting, the boy suddenly, and without any warning, turned to his right immediately in front of the automobile. In an effort to avoid a collision, Ligman very suddenly swerved his car to his left and came into collision with the boy near the center of the intersection of the streets, but probably a little to the left of the center of J street; the automobile ran to approximately the southwest corner of the intersection of the streets, where it turned over on its side. The collision threw the boy several feet towards the opposite corner of the intersection. As a result of the collision, the boy was very seriously injured.

The accident occurred in broad daylight and at a time when there were no other vehicles on either of these streets near their intersection. The case was tried to a jury, and resulted in a general verdict in favor of the respondent. Appellant's motion for new trial was denied and judgment was entered dismissing the case, from which judgment the guardian has appealed.

Of the more than twenty ,assignments of error pre-

sented, two are outstanding and run through the case and they will be given particular attention.

First: It is first and chiefly contended by the appellant that the doctrine of last clear chance was involved and that the court was in error in refusing to submit it to the jury. Numerous assignments of error are made to the instructions on the ground that they failed to submit this question, and to the failure of the court to give certain of appellant's requested instructions embodying the theory of the last clear chance. If that doctrine is involved in this case it is plain that there must be a reversal, for the trial court refused to consider it as applicable to the facts.

A reading of the record and the authorities convinces us that the doctrine of last clear chance was wholly inapplicable. to any of the facts of this case. This court has held that whether this doctrine is applicable in a given case is a question of law to be determined by the court. *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106. This doctrine can never arise where the party charged is required to act instantaneously. It presupposes contributory negligence, and where that negligence creates instantaneously a dangerous situation, without an appreciable lapse of time in which to avoid it, there is no room for its application. Nowhere, to the knowledge of the writer, has the doctrine of last clear chance been more accurately and clearly stated than in the case last above cited, where this court said:

"Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury, or the proof of circumstances which will put the one charged to implied notice of the situation. There was no duty upon appellants to slow down or to take such care as the doctrine of last clear chance demands, until they were put to the hazard of choice

by some act of respondent. When respondent changed his position, he relieved appellants, unless the facts would warrant the court and jury in saying that there was sufficient time between his act and the impact for appellants to realize his peril and to avoid it. To invoke the doctrine of the last clear chance, we must grant the negligence of respondent and find that his negligence 'had terminated or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him;' that appellants knew and appreciated his danger and could, in the exercise of reasonable care, have avoided injuring him. A mere statement of the rule reveals its inapplicability to a case where the contributory negligence began and culminated without the lapse of appreciable time. The doctrine is not applied where the negligence is concurrent."

To the same effect see the following cases: *Scharf v. Spokane & Inland Empire R. Co.*, 92 Wash. 561, 159 Pac. 797; *Woolf v. Washington R. & Nav. Co.*, 37 Wash. 491, 79 Pac. 997; *Bullis v. Ball*, 98 Wash. 342, 167 Pac. 942.

The testimony in this case conclusively shows that the boy would not have been hurt had he continued on his course near his left-hand curb, and that he received his injury only because he suddenly and unexpectedly turned directly in front of the automobile just as he was about to meet it. There was not sufficient lapse of time for the driver of the automobile to "effectually act upon the impulse" to save the boy from injury. The rule of last clear chance cannot exist except on the theory that one who sees, or who by the exercise of reasonable care could see, another in a place of danger as a result of his own negligence, must nevertheless avoid injuring him, if by the exercise of reasonable care he can do so, and this necessarily implies such lapse of time as may be necessary for "thought, appreciation and mental direction." Where the orig-

inal act of negligence and the injury are to all intents and purposes instantaneous there cannot be any last clear chance. Such was the situation here. We therefore think the court did not commit any error on the question.

Second: At the close of the plaintiff's case, the court ruled that there was no testimony concerning the speed of the automobile at the time of the accident, and that there was no testimony tending to show that, if the automobile was violating the speed law, such speed had anything whatever to do with the collision. By its instruction No. 6, the court told the jury that "the plaintiff has failed to produce any evidence as to the speed of the car contributing in any way to the accident, and you are therefore instructed to disregard the matter of the speed of the car entirely." The appellant, throughout his briefs, has strenuously insisted that the question of the speed of the automobile was in the case and should have been submitted to the jury. We are of the opinion that the court's ruling and instruction were correct. The only testimony produced by the plaintiff as to the speed of the car was that of a certain policeman of Tacoma who stated that, after the accident, Ligman, the driver of the automobile, told him that he, Ligman, was going about twenty miles per hour; but there is nothing in this statement to show that Ligman intended to state that he was going twenty miles an hour at the time of the collision. But if it should be conceded that, at the time of the collision, the automobile was traveling at the rate of twenty miles per hour, and that such speed was in violation of the state laws and city ordinance, yet there is not a word of testimony showing, or tending to show, that the speed of the car had anything to do with the collision. The record shows that the collision

would have occurred whether the automobile was traveling at the rate of ten miles or of thirty miles an hour. There was no danger at all, regardless of the speed of the car, until the boy suddenly turned in front of it at such close proximity to it as that the collision was inevitable.

The violation of a speed ordinance or statute is not in itself sufficient to make the driver of the automobile liable in damages in the event of a collision. There must be something more; it must appear that such violation was the proximate cause of the injury. There is absolutely nothing in this case to show that the speed of the car was the proximate cause of the injury. We feel confident, therefore, that the court was correct in taking away from the jury the question of the speed of the automobile.

The conclusion at which we have arrived on this question makes it unnecessary for us to discuss certain other assignments of error whereby the appellant undertook, on cross-examination of respondents' witnesses, to inject into the case testimony as to the speed of the car.

Third: Complaint is made of instruction No. 14 to the effect that the burden of proving a violation of an ordinance of the city was upon the plaintiff, and that even if the driver of the automobile did violate the ordinance, such violation would not constitute negligence upon which recovery could be had, "unless the act which constituted the violation of the ordinance was the proximate cause of the injury," and that, if the jury believed that the driver of the automobile turned it from the right to the left side of the street in violation of the ordinance, but did so in an emergency, and in an effort to avoid an injury, then such violation would not constitute negligence. This instruction does

nothing more than inform the jury that the mere fact, if it should be such, that Ligman turned his automobile to the left side of the road in violation of the ordinance and statute, that fact alone would not be sufficient to make respondents liable in damages, and that whether in so doing the driver was guilty of negligence approximately causing the injury would depend upon the circumstances and the reasons existing at the time. We have no doubt that this is a correct statement of the law. Circumstances may arise where it is entirely proper, in the exercise of reasonable care, to violate the ordinance by turning an automobile to the wrong side of the street. The mere fact that the automobile may be on the wrong side of the street at the time of the collision is not conclusive of negligence, because the driver of the automobile had a right to show why he so did and to excuse that action, and if the jury believed that, in the exercise of ordinary care under the circumstances, he was justified in turning to the wrong side of the street, there could be no negligence in such act upon which recovery could be had.

Fourth: It is claimed that the court's instruction No. 18 is erroneous in that, in effect, it directed the jury that, if they found that the boy was on roller skates, he could not recover. The instruction is certainly not subject to the criticism made of it. The substance of that instruction was that it was the duty of the plaintiff, while on a public street on roller skates, to use his senses and observe other traffic, and that if he could see the approach of the automobile and had ample room to pass it, and by the observance of ordinary care on his part might have avoided the injury, then he could not recover. Certainly this instruction properly stated the law. It might be argued that the jury, in determining whether or not the plain-

tiff was guilty of negligence, was authorized to measure his care by that of an adult person, but that objection would not be tenable because, by instruction No. 8, the court particularly and correctly told the jury that they should not apply the same rules of conduct to the plaintiff which they would apply to an adult, but should make allowance for his youth.

Fifth: The court refused to give the following instruction requested by the appellant:

"You are instructed that, under the law of the state of Washington, it is unlawful for any person to drive, operate or move a motor vehicle at a rate of speed faster than one mile in five minutes at any crossing within the more thickly settled or business portion of any city or town of this state; that it is unlawful for any person to drive, operate or move a motor vehicle along any of the streets of the city of Tacoma faster than one mile in three minutes."

In an ordinary case it would be proper to give an instruction embodying the idea expressed in the one just quoted, but, as we have heretofore seen, the question of the speed of the automobile was not in the case and had nothing to do with the injury. Consequently it was not error to refuse to give this requested instruction.

Sixth: It is next contended that the court should have granted appellant's motion for a new trial because of alleged misconduct of some of the jurors. We cannot consider the merits of this assignment. This supposed misconduct is shown by affidavits and these affidavits are made a part of the transcript only. They are not embodied in nor made a part of the statement of facts. This court has uniformly held that it will not consider such affidavits unless they are embodied in and made a part of the statement of facts.

*State v. Armstrong,* 87 Wash. 275, 151 Pac. 775, and cases therein cited.

The appellant has assigned as error the giving of practically every instruction by the court to the jury upon the merits of this case, as well as the refusal to give each instruction requested by the appellant. We cannot lengthen this opinion by discussing all of these assignments of error. Suffice it to say that what we have already said will dispose of a large number of the assignments which we have not specifically discussed. We have carefully read all of the instructions given by the court and are satisfied that they fairly and liberally presented the law of the case to the jury. The boy has been grievously injured, but he has had a fair trial before a jury, which returned a verdict against him.

We do not find any error which would justify a reversal of the case, and we therefore affirm it.

HOLCOMB, C. J., MACKINTOSH, FULLERTON, and PARKER, JJ., concur.