[No. 20936. Department Two. May 8, 1928.]

WILLIAM F. GALLOWAY, *Respondent*, v. H. N. SEGER-
STROM *et al., Appellants.*[1]

[1] HIGHWAYS (53, 57)—COLLISION AT INTERSECTION—CONTRIBUTORY
NEGLIGENCE—EVIDENCE—SUFFICIENCY. The driver of an auto-
mobile, entering upon a paved highway from an intersecting
road, is guilty of contributory negligence, precluding any re-
covery, where he did not see cars in plain view, approaching
the point from both directions, until he had reached the edge
of the pavement, going at such a speed that he could not stop or
cross the path of an approaching car, which he thus forced
off the pavement, and struck head on when he turned to the
left to avoid the collision.

Appeal from a judgment of the superior court for
Spokane county, Witt, J., entered June 30, 1927, upon
findings in favor of the plaintiff, in an action for per-
sonal and property injuries sustained in an automobile
collision. Reversed.

*McCarthy, Edge & Lantz,* for appellants.
*Garrecht & Twohy,* for respondent.

MAIN, J.—The plaintiff brought this action to recover
for personal injuries and also for damages to an auto-
mobile of which he was the owner and driver, when it
collided with an automobile owned by the defendants
and driven at the time by Mrs. Segerstrom. The de-
fendants denied liability, plead contributory negligence
on the part of the plaintiff, and by cross-complaint
sought damages against the plaintiff for injury to their
car. The cause was tried to the court without a jury
and resulted in findings and a judgment denying re-
covery upon the cross-complaint and sustaining a re-
covery against the defendants in the sum of $2,136;
from which judgment the defendants appeal.

[1]Reported in 267 Pac. 40.

The facts may be summarized as follows: The accident out of which the litigation arose happened at about eleven o'clock a. m., December 1, 1926, on the Trent road, which is a paved highway extending from the city of Spokane in this state to the city of Coeur d' Alene in the state of Idaho. To the south of this road there is another road which, on the plat, is called the "graveled road." This latter road gradually gets nearer to the Trent road until it finally enters it. A short distance before the two roads come together, there is a cross road extending from the graveled road to the Trent road. This road bends a little to the east, and is called in the evidence the "circle road." An automobile going northerly on this road would enter the Trent road, not due north but bearing a little to the west of north. Just to the west of where this circle road enters the Trent road, the Spokane and International Railway track crosses that road. As one approaches the Trent road through the circle road, there is nothing to obstruct the vision to the west or to the east.

Mrs. Segerstrom was proceeding east along the south side of the pavement of the Trent road. The respondent had come from the west on the graveled road, turned into the circle road and proceeded, as he testified, at about ten miles per hour until the front wheels of the Ford touring car which he was driving were practically at the edge of the pavement. He then turned suddenly to the left. Mrs. Segerstrom, seeing him approaching the pavement at ten miles per hour and at a speed at which he could not stop before passing onto the pavement, turned to the right and the cars came together just south of the pavement, practically head on. Both cars were damaged and the respondent was seriously injured. At the time the respondent approached the Trent road, there was approaching

from the east, on the north side of the pavement, a Ford truck followed by an automobile stage. The Ford truck passed the point of collision just at about the time it occurred. The respondent did not see the automobile truck or bus coming from the east, and he did not see the Jewett sedan which Mrs. Segerstrom was driving, coming from the west, until the front wheels of his car were practically at the edge of the pavement. In making the turn, the right front wheel of the Ford car circumscribed a segment on the pavement.

The respondent, in part, testified:

"Q. About what speed were you going at when you were making this turn on the circular part of that gravel road? A. I would judge it to be somewhere in the neighborhood of eight to ten miles an hour, not to exceed ten, because the turn is very short. Q. All right. Then what happened? A. Just as my front wheels approached the pavement here I noticed the other car right at the other side of the railroad crossing. Knowing that the speed at which this car was coming, that I could not make it across here, where I should be to travel down this side of the road, I turned my car completely away from the pavement, so that the party might have gone right on by without any interference, but this party seemed to be startled or something, I don't know what, but turned her car to the south and met mine off the pavement at this point. From that on, for I don't know just exactly how long, I know nothing, I was out. Q. Had any part of your car gotten on the pavement at that time? A. How? Q. Had any part of your car gotten on the pavement at any time before you were struck? A. I think that, as I approached the pavement here, my right front wheel cut a short segment on the pavement as it came around on this continued circle. That would be the only part of my car that ever touched the pavement, it would be the right front wheel, if it did at all."

He further testified on cross-examination, in part, as follows:

"Q. Now, where was the Segerstrom car when you first saw it? A. Just to the west of the railroad tracks. Q. How far west? A. Less than the length of the car. Q. Then that would be in the vicinity of these figures '0 plus 34', is that it? A. I don't know what distance that would be. Q. Well, this is ten feet to the inch, this map is; an inch on this map is the same as ten feet, and I assume from your statement, you say it is about the length of a car west, so it would be in the neighborhood of that '0 plus 34'. A. Somewhere in that neighborhood, yes. Q. And that would be about fifty feet from where your wheel ran out on the pavement, on the paved road, is not that correct, five or six inches here, fifty or sixty feet (indicating)? A. Practically. Q. Yes. Now, where were you when you saw her there? A. I was just at the edge of the pavement—oh, you mean—give me that pointer. MR. GARRECHT: Here it is. A. Your question is—MR. EDGE: Q. Where were you when you first saw her? A. My car was just coming to the edge of the pavement, about here (indicating). I was coming around this turn (indicating). Q. The front wheel about the edge of the pavement? A. Yes, sir, the right hand front wheel was just about to the edge of the pavement. Q. Up until that time you had not seen her, had you? A. I had not seen her at all."

The trial court found that Mrs. Segerstrom was driving at a high and dangerous rate of speed. The evidence upon the matter of speed is in conflict, the respondent testifying that it was in excess of thirty miles per hour and Mrs. Segerstrom and the driver of the automobile bus testified that her speed was materially less than that. We see no reason to disturb the holding of the trial court that Mrs. Segerstrom was not free from negligence at the time. This disposes of any recovery upon the cross-complaint.

[1] The principal question is, whether the respondent was guilty of negligence which contributed to the accident with the resultant injury to himself and his

automobile. In approaching the Trent road at a speed, whatever it was, whether ten miles an hour as he testified, or twenty or twenty-five as witnesses for the appellants testified, the fact is that he proceeded without any indication of slackening his speed until he was in such proximity to the pavement that he would not have been able to stop his car without at least the front wheels passing thereupon. In proceeding in this way, it was, in effect, saying to a person coming from the west, as Mrs. Segerstrom was, that he was going to cross in front of her. Acting upon this assumption, her only alternative was to turn to the right, because the Ford truck and the stage approaching from the east made it impossible for her to attempt to go around to the left. The respondent, by the manner in which he drove his automobile having indicated to a person observing him and approaching from the west that he intended to cross the pavement, could not thereafter alter his course, turn suddenly to the left in the path of the other car that had left the pavement, and be free from fault which contributed to the result. It was the duty of the respondent, as he approached the pavement, to use his senses and observe the other traffic. *Murlie v. Stephens,* 113 Wash. 182, 193 Pac. 684. This he did not do, because he himself testified that he, at no time, saw the Ford truck and the stage approaching from the east and did not see the Jewett sedan until the front wheels of his car were practically at the edge of the pavement. This case is not one that comes within the rule that, where there is a sudden emergency, the driver of a vehicle may be justified in turning to the left because, by his own acts, the respondent had made it evident to the driver of an approaching vehicle that his purpose was to cross the pavement or to the other side thereof without stopping.

There are many cases cited in the briefs of the respective parties, but it does not appear to us necessary to review these, as each case of this kind must depend largely upon its own facts.

The trial court found that the respondent, as he approached the Trent road, was "keeping a vigilant lookout," but this finding cannot be sustained by the evidence. In taking the view that the respondent was guilty of negligence which contributed to the injury, we are not disagreeing with the trial court upon any fact found where the evidence was in dispute. The facts, as they have been above stated, are those about which there can be no substantial controversy. From these facts, the trial court drew the inference of fact that the respondent was not guilty of contributory negligence. We are unable to follow the trial court in this, because it seems to us that the irresistible inference is that the respondent was guilty of contributory negligence in approaching the Trent road as he did, and that this materially contributed to the accident.

The judgment, in so far as it dismisses the cross-complaint of the appellants, will be affirmed. In all other respects it will be reversed, and the cause remanded with direction to dismiss the respondent's action.

FULLERTON, C. J., and ASKREN, J., concur.

HOLCOMB, J., dissents.