[No. 21779. Department One. July 25, 1929.]

SOLOMON ZETTLER, *Respondent*, v. THE CITY OF
SEATTLE, *Appellant*.[1]

*Thomas J. L. Kennedy* and *A. C. Van Soelen*, for
appellant.

*Vanderveer & Levinson*, for respondent.

TOLMAN, J.—This is an appeal from a judgment
rendered against the defendant, on a verdict, in a
personal injury case.

Respondent was driving his automobile up a 12.3
per cent grade on Yesler way in the city of Seattle,
going in an easterly direction. When about two thirds

[1]Reported in 279 Pac. 570.

of the distance up the hill, his motor stalled and he coasted backwards some little distance, then swinging his car to the north, in an attempt to head it down hill, he came to a stop directly upon, and nearly crosswise of, the west bound cable car track of the municipal street car system. An east bound cable car was approaching with its gong sounding. Respondent alighted from his automobile and, having looked up the hill for the possible appearance of a west bound street car, and, as he testified, seeing none, he, as the east bound street car passed, applied himself to the task of pushing his car off of the west bound track, standing on the left side of his machine with his back toward any west bound car which might threaten his safety. According to his account, he had just succeeded in starting his car forward and taken two or three steps, when he was struck and injured by a west bound cable car which came down the hill from behind him. The evidence is quite clear that, if respondent had kept a lookout up the hill to the east, he could have seen the approaching cable car in ample time to have stepped off of the track and secured his personal safety, but the evidence is conflicting as to whether the operator of the cable car actually saw the respondent in time to avoid the accident, as well as upon most other features of the case.

As we now see the record there are but two questions to be decided here: First, as to the sufficiency of the claim filed with the city clerk; and, second, as to whether the instructions given to the jury on the last clear chance theory were erroneous.

The only portion of respondent's claim, as filed, which is questioned, is that which relates to his place of residence. The claim recites:

"For four years last past I have resided in Seattle, Washington, making my home in my gas boat "Hero,"

which is and has been moored at the Union Pacific dock, at the foot of King street, in said city, until about October 1, 1927, at which time I removed to 1113 21st avenue, in said city, where I was residing at the time of receiving said injuries."

In his testimony, respondent clearly states that his residence was in or on the gas boat "Hero," as located in the extract from the claim quoted, not only before, but also at all times after October 1, 1927, and at the time of the accident. He testified that, on October 1, 1927, he moved his shop and tools, or place of business, to 1113 12th avenue, but his residence at all times remained the same. Sufficient appears in the record to indicate that 21st avenue, as it appears in the claim, should have been 12th avenue, and that the error is purely a typographical one. There is also sufficient in the record to indicate that the statement of the removal of the respondent's residence from the gas boat was a pure inadvertence or misunderstanding on the part of the person who prepared the claim.

No contention is made that the city was actually prejudiced or in any way misled by these errors, or either of them. On the contrary, it appears that the respondent was removed directly from the scene of the accident to the city hospital, where he remained for some eight weeks. Within an hour after his arrival at the hospital, he was interviewed on behalf of the city, and the true facts as to his residence were sufficiently revealed for every practical purpose and, presumably, if the city was diligent, its officers and agents knew all of the facts as to the respondent's residence before ever his claim was filed.

The appellant, on this point, relies upon the case of *Barton v. Seattle,* 114 Wash. 331, 194 Pac. 961. In the *Barton* case, there was a total failure to state the place of residence for six months preceding the acci-

dent, and the court, after reviewing and citing with approval our earlier cases, where an honest attempt to comply with the law in this respect was held to be sufficient, said:

"But here there was an entire failure to give the claimant's residence for six months preceding the accrual of the right of action. There was no attempt to comply with this part of the statute.

"To hold that it was not necessary to comply with the six months' provision of the statute would require a holding that it is not necessary to comply with any provisions of the statute with reference to residence and, following this line of reasoning, we would soon entirely wipe out the statute."

That holding cannot, and ought not to, be construed as in any manner overruling or limiting the prior decisions of this court which are there cited and distinguished. The doctrine of those prior cases excusing honest mistakes was reaffirmed long after the *Barton* decision in *Green v. City of Seattle,* 146 Wash. 27, 261 Pac. 643. We therefore hold that the *Barton* case is applicable only where there is an entire failure to state the residence, and has no application where an honest effort has been made to state the residence, as the law requires, in the written claim. Therefore the trial court did not err in admitting the written claim in evidence.

 The trial court gave an instruction on the last clear chance theory in the usual form, except as hereinafter pointed out. The last clear chance doctrine is a very just and salutary rule to be applied in a proper case, but its misapplication is fraught with great danger and often leads to unjust results, because it always invites a jury to disregard or excuse contributory negligence which would otherwise bar the action. The doctrine is divided into two separate and distinct parts. First, the part which applies when the operator

of the instrumentality which inflicted the injury actually saw the plaintiff in a position of obvious peril in time, by the exercise of reasonable care, to have avoided injuring him and failed to do so. The second part applies only when the operator, in the exercise of reasonable care, should have seen the plaintiff and recognized his peril and when the plaintiff's own negligence has ceased, leaving him in a position of danger from which he cannot extricate himself. The two parts of the rule are clearly defined and distinguished one from the other in *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302.

In this case, the evidence was conflicting as to whether the operator of the cable car actually saw the respondent in a position of peril in time to avoid the injury, and that question was for the jury under proper instructions. The court therefore did not err in giving the first part of the usual instruction.

Under the facts shown here, it was error to give the second or last part of the instruction, because plaintiff's negligence had not ceased, and he was not in a position of peril from which he could not extricate himself. Admittedly, there was nothing between him and the approaching street car. He had a clear view for a distance which was entirely ample. He was on the street car track between intersections where he knew the cable car had the right of way. He knew, by his own very recent experience, of the grade of the street, and was bound to know its effect on the stopping of the cable car. He knew that cars were operated over that track at frequent intervals, and he had only to turn his head to learn of the approach of danger, and a step, or two at most, which he was entirely able and free to take, would have placed his person beyond the danger zone. Therefore, on the admitted facts, respondent was guilty of contributory negligence in

failing to keep a lookout and act accordingly, and can recover under no theory of the law, save only that the operator of the cable car saw and appreciated his peril and, having time so to do, failed to exercise reasonable care to save the respondent from the results of his own negligence.

Moreover, the instruction as given entirely omitted the condition that the plaintiff must be unable to extricate himself from his position of danger, so that, if there had been conflict in the evidence upon the point of his negligence having ceased leaving him in a position of peril from which he could not extricate himself, still the instruction as given was erroneous.

Because of the error in instructing the jury, the judgment is reversed and a new trial ordered.

HOLCOMB, FULLERTON, and BEALS, JJ., concur.

FRENCH, J. (dissenting)—I am compelled to dissent from the majority opinion, for the reason that the court decides, as a matter of law, that "respondent's negligence had not ceased," and that "respondent was guilty of contributory negligence in failing to keep a lookout and act accordingly." In the case of *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A 943, this court, in discussing the doctrine of last clear chance in a case where a pedestrian had been injured by being hit by an automobile, said:

"III. It is also claimed that the evidence shows that both parties were concurrently negligent up to the time of the accident, and that, therefore, the last clear chance rule cannot apply. Whether the respondent negligently failed to look for approaching vehicles before entering upon the street was clearly a question for the jury. But assuming that he did fail to look, he was not negligent, as a matter of law, in failing to be continuously thereafter looking to ascertain if autocars were approaching from behind him, especially

impeded as he was by the sack of grain upon his left shoulder. *Lewis v. Seattle Taxicab Co.*, 72 Wash. 320, 130 Pac. 341; *Ludwigs v. Dumas*, 72 Wash. 68, 129 Pac. 903; *Hillebrant v. Manz*, 71 Wash. 250, 128 Pac. 892, 895, and cases there cited. Even assuming, therefore, that he was negligent in the first instance, it was for the jury to say whether his negligence continued up to the time of the accident, or whether it terminated after he got into the street so as to be in plain view of drivers of auto-cars.''

In the instant case, it was respondent's duty to remove his automobile from the street car track, if it was possible for him to do so, and the question of whether or not he was guilty of contributory negligence in so doing was one for the jury. Blashfield Cyclopedia of Automobile Law Vol. 1, p. 782, § 36. It seems to me that the question of respondent's contributory negligence, when it began and when it ceased, was one of fact for the jury, and, it being admitted that the instruction given was legally correct, it seems to me that it was clearly applicable to the facts in this case under the rule announced in the citations above given.