[No. 29849. Department One. July 6, 1946.]

CATHERINE TOSTO, *as Administratrix, Respondent,* v. THE
CITY OF SEATTLE *et al., Appellants.*[1]

*A. C. Van Soelen* and *Arthur Schramm,* for appellants.

*Padden & Moriarty* and *Ivan Merrick, Jr.,* for respond-
ent.

MALLERY, J.—This action was instituted by Catherine
Tosto, administratrix of the estate of Frank Tosto, deceased,
to recover damages for the wrongful death of Frank Tosto
and for the benefit of Catherine Tosto, the surviving spouse
of Frank Tosto. The city of Seattle and William Herth, the
driver of the bus owned by the city of Seattle and operated
by it as a part of its transit system, are named defendants.

Plaintiff's intestate was a passenger in an automobile
operated by one William Van Dusen, going south, which

[1]Reported in 171 P. (2d) 194.

collided with a city bus going north on Twentieth avenue west at Bertona street. Twentieth avenue west runs in a northerly and southerly direction. A short distance north of Bertona street, it merges with Gilman avenue, which angles somewhat to the west. Twentieth avenue west runs on a downgrade of two and one-half per cent from Dravus street on the south to Bertona street. The west eighteen feet of Twentieth avenue west is paved with concrete; the next twelve feet is paved with black top or asphaltic concrete; the remainder is unpaved. About 620 feet south of Bertona street, the Dravus street bridge crosses Smith's cove and the Great Northern tracks.

The bus involved in the accident was a shuttle bus, which ran from approximately Fifteenth avenue west and Dravus street, across the Dravus street bridge, turned north on Twentieth avenue west and Gilman avenue to Fort Lawton.

Near the northwest corner of Twentieth avenue west and Bertona street is a manhole cover or catch basin cover. North of Bertona street on the west side of Twentieth avenue west is a garage, the center of which is fifty-six feet north of the manhole cover. North of the garage is the Sidetrack Tavern, the center of which is twenty-three feet north of the center of the garage or seventy-nine feet north of the catch basin cover. Still farther north on the east side of Twentieth avenue west is a pole. It is about ninety-eight feet diagonally from the pole to the curve of the roadway opposite the garage.

The parties have two diametrically opposite theories concerning the accident and its cause. Plaintiff's testimony was that, shortly before ten-thirty in the evening in question, the deceased, Frank Tosto, and William Van Dusen left the Sidetrack Tavern, where Van Dusen had drunk two glasses of wine and Tosto, two bottles of beer, and crossed Twentieth avenue west to Van Dusen's car, which was parked on the east side of the street near the pole above mentioned. The car was headed south and Van Dusen drove diagonally across Twentieth avenue west and reached a point opposite the garage, where he straightened his course and traveled south about three feet from the

west curb of Twentieth avenue west. It was his intention to make a "U" turn at Bertona street and go north on Twentieth avenue west. Van Dusen saw the city bus approach from Dravus street on its own side of the highway, but, when it reached a point a little south of the south curb of Bertona street, it suddenly swerved to its left and collided with the Van Dusen car.

On the other hand, defendant's bus driver testified that he was traveling north on Twentieth avenue west at a speed of twenty to twenty-five miles per hour on his right-hand side of the street; that when he was a short distance south of Bertona street, the Van Dusen car entered the east side of the paved highway from a point south of the tavern. The lights of the Van Dusen car were shining in the bus operator's face, and, when he saw the lights coming toward him on his side of the highway, he swung to the left to avoid a collision, and, at the same moment, Van Dusen swung to his right, and the vehicles came together in the intersection of Bertona street.

The bus came to a stop with its front wheels at the curb on the northwest corner of the intersection, with the front overhang of the bus over the parking strip. The Van Dusen car was swung around and came to rest headed north, approximately in front of the garage, according to plaintiff's testimony and, according to the defendant's testimony, approximately thirty-four feet from the point of impact.

From a judgment for plaintiff based on the verdict of a jury, the defendants appeal.

Appellants assign as error the giving of the court's instructions Nos. 6, 7, 10, 12, 14, 17, and 18; and the denial of their motion for a new trial.

Instruction No. 6 reads as follows:

"You are instructed that it is the duty of the operator of a motor vehicle to at all times, when approaching an intersection, keep his car under such reasonable control that he can, by the exercise of reasonable care, avoid colliding with any other vehicle that might be in the intersection, and that failure to do so is negligence."

Instruction No. 7 given by the court reads as follows:

"You are instructed that it is the duty of the operator of a motor vehicle to at all times exercise reasonable care to keep his car under reasonable control, so that in the event an emergency might arise which would give rise to danger of collision with other vehicles on the highway, he could by the exercise of reasonable care avoid such collision."

By these instructions, the jury was told that the operator of a motor vehicle must, at all times, keep his car under such control that he can avoid colliding with any other vehicle which might be in the intersection, and that failure to do so is negligence. In effect, these instructions impose upon the operator of a motor vehicle the duty of so operating his car that no one can collide with it and makes a breach of that duty negligence. That is not a correct statement of the law, because it imposes upon the operator of a car the duty of assuming that someone else is going to violate the law and requires him to so control his vehicle that he can avoid the results of the other's negligence.

Instruction No. 14 given by the trial court reads as follows:

"The court instructs you that, irrespective of any negligence on the part of William Van Dusen, if any, if you find that the defendant driver, at any time prior to the accident, saw William Van Dusen's automobile approaching and observed that by reason of the way it was traveling he was going to be unable to avoid a collision, and that a collision was inevitable if he proceeded upon his course with his automobile, and if you further find that defendant saw and observed these things a sufficient length of time before the actual collision took place so that by the exercise of ordinary care and diligence he could have safely stopped the bus, turned his vehicle and passed the other, or otherwise avoided this accident, it was his duty to do so, and if he failed to do so under such circumstance, the defendant would be guilty of negligence."

This is a last clear chance instruction. This court has held that it is error to give a last clear chance instruction where the facts do not justify it. *Johnson v. Seattle,* 141 Wash. 385, 250 Pac. 409; *Zettler v. Seattle,* 153 Wash. 179, 279 Pac.

570; *Portland-Seattle Auto Freight v. Jones,* 15 Wn. (2d) 603, 131 P. (2d) 736. The rule of last clear chance does not apply unless the party charged had time and opportunity to avoid the accident by the exercise of reasonable care. *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106; *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684; *Cooley v. Tacoma R. & P. Co.,* 120 Wash. 452, 207 Pac. 608; *Shanley v. Hadfield,* 124 Wash. 192, 213 Pac. 932; *Rossier v. Payne,* 125 Wash. 155, 215 Pac. 366; *Lee v. Gleason Co.,* 146 Wash. 66, 262 Pac. 133; *MacDonald v. Seattle,* 126 Wash. 1, 217 Pac. 39; *Chadwick v. Ek,* 1 Wn. (2d) 117, 95 P. (2d) 398; *Portland-Seattle Auto Freight v. Jones,* 15 Wn. (2d) 603, 131 P. (2d) 736; *Thompson v. Porter,* 21 Wn. (2d) 449, 151 P. (2d) 433.

 In the case at bar, the accident involved was a head-on collision under both respondent's and appellants' theories. This court said, in *Erickson v. Barnes,* 6 Wn. (2d) 251, 107 P. (2d) 348:

"No case is cited, and we have found none, where the doctrine of last clear chance has been applied where there has been a collision between two motor vehicles meeting each other on a straight and unobstructed road where each had full opportunity to avoid the other by holding to the right. On the other hand, there are a number of decided cases where the applicability of the doctrine has been denied under such states of fact. Two reasons frequently given for such denial are suggested in *Thompson v. Collins, supra:*

" 'There must, of course, be an appreciable length of time in which the actor, upon whom rests the duty of avoiding the damage and injury after the other has placed himself in a situation of danger, may act. If respondent had an *equal chance* to exercise the last clear chance to avoid the accident, of course neither had the duty of exercising the last clear chance, because the chances were equal.'

"When two drivers collide head-on after approaching each other on a straight, unobstructed highway, one traveling in his proper lane and the other not, it is difficult to imagine how the doctrine of last clear chance can be applied to the driver who was in his proper lane. It is obvious that he has less than an equal chance to avoid the collision, for to do so he must depart from the path which the statute specifically requires him to maintain, while the other driver needs only to obey the statute and swing back where he belongs.

"When, in such a case, does the offending driver get into a position of peril from which he cannot extricate himself? Or, at what point is the driver of the other vehicle no longer justified in relying upon the presumption that the offending driver will obey the law and return to his own lane? No specific answer can be given to these questions. But it is apparent that the offending driver is in no real peril until the cars have closely approached each other, for he can swerve into his rightful lane in less than a second."

It was error to give instruction No. 14.

We have examined the other instructions complained of, and, while not finding them to constitute reversible error, we prefer not to set them out herein in full with our approval to become models for future use.

For the reasons given, the judgment is reversed, and the lower court is directed to grant appellants a new trial.

BEALS, C. J. MILLARD, STEINERT, and SIMPSON, JJ., concur.