[No. 60509-7-I.   Division One.   June 30, 2008.]

MARC STEPHEN RENNER, *Appellant*, v. THE CITY OF MARYSVILLE, *Respondent.*

*Robert S. Bryan* (of *Shafer Moen & Bryan, PS*), for appellant.

*Shannon M. Ragonesi* (of *Keating Bucklin & McCormack*), for respondent.

¶1 BECKER, J. — At issue in this appeal is the interpretation and application of the claim filing statute, RCW 4.96-.020, to appellant Marc Renner's claim against the city of Marysville for wrongful termination of employment. The current statute requires a statement of the claimant's actual residence at the time of presenting the claim and for a period of six months before the claim arose. We hold that a bona fide attempt to meet this requirement substantially complies with the statute so long as the information provided enables the government entity, by reasonable diligence, to determine where the claimant resided at the relevant times. The statute also requires a statement of the amount of damages claimed. Renner listed the elements of his damage claim while stating that the amount was "undetermined." Under the circumstances of this case we cannot say this was insufficient as a matter of law. The order granting the city's motion for summary judgment is reversed.

¶2 Marc Renner worked for the city of Marysville as the computer network administrator. The city discharged him on December 2, 2003. Renner claims that he was wrongfully discharged because he expressed interest in having his job converted to a union position. The city's view is that Renner

approached the union only in an eleventh hour attempt to insulate himself from termination for a well-documented history of misconduct and insubordination.

■ ¶3 A statute provides that an action shall not be commenced against any local governmental entity for damages arising out of tortious conduct unless a claim is first presented to the governing body of the entity and 60 days have elapsed. RCW 4.96.020. The general purpose of the claim-filing statute is "to allow government entities time to investigate, evaluate, and settle claims" before they are sued. *Medina v. Public Util. Dist. No. 1 of Benton County*, 147 Wn.2d 303, 310, 53 P.3d 993 (2002). The claim must name the persons involved, describe the injury or damage, and provide the time, location, and circumstances in which the injury or damage occurred. Pertinent to this case, the claim "shall contain the amount of damages claimed, together with a statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six months immediately prior to the time the claim arose." RCW 4.96.020(3).

¶4 Using a form provided by the city of Marysville, Renner filed a claim for damages on May 26, 2005. He filled in the spaces asking for the claimant's name, residence, and home and work telephone numbers. In the space supplied for his place of residence, Renner filled in "6811 54th Pl. N.E. Marysville, WA 98270." Where the form left a blank for the damages claimed "in the sum of $_____," Renner wrote, "undetermined pending further investigation and discovery."[1] The form directed the claimant to describe the occurrence. Renner attached a response that stated, "Wrongful termination of more than five years of employment as City of Marysville and Marysville Fire District Network Administrator." The form also directed the claimant to "[a]ttach copies of all documentation relating to expenses, injuries, losses, and/or estimates for repair." Renner attached a response that stated, "Wages and benefits as well known to

---

[1] Clerk's Papers at 74 (claim for damages).

the city since termination plus front pay, emotional damages, costs, fees and such other damage as determined."[2]

¶5 Renner sued the city for wrongful termination on October 21, 2005. Among other things, his complaint alleged that he had filed a proper claim in a timely manner. At the same time, he served the city with a set of discovery requests. On December 6, the city served Renner with a set of objections to his discovery requests. On December 12, the city answered the complaint. The answer admitted that Renner had filed a claim but denied that the claim was either proper or timely. The answer also asserted Renner's failure to comply with the requirements of chapter 4.96 RCW as an affirmative defense.

¶6 On February 3, 2006, the city sent Renner a document responding to his discovery requests. Renner's attorney admits that he did not read this document at the time because it was captioned "Objections" and he assumed that, like the first set of objections, it contained no meaningful information. This document did maintain the city's position that Renner's requests were "vague," "burdensome," and "overly broad." But it also included substantive responses, including the facts on which the city was basing its affirmative defense under chapter 4.96 RCW: "Plaintiff failed to comply with RCW 4.96 as he did not state an amount of damages or his residences for six months prior to accrual of his claim."[3]

¶7 On July 19, 2007, the city successfully moved for summary judgment dismissal of Renner's wrongful termination claim on the basis that Renner's claim did not comply with chapter 4.96 RCW. Renner appeals.

¶8 On appeal of summary judgment, the standard of review is de novo and the appellate court performs the same inquiry as the trial court. When ruling on a summary judgment motion, the court is to view all facts and reason-

---

[2] Clerk's Papers at 75 (claim for damages).

[3] Clerk's Papers at 55 (city's response to plaintiff's discovery, dated February 3, 2006).

able inferences therefrom in the light most favorable to the nonmoving party. A court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

¶9 The city argues Renner's claim failed to comply with the statute in two ways. First, he did not specifically state where he had resided for the six months prior to the time his claim arose. Second, he did not state an "amount" of damages claimed.

¶10 Renner initially contends the city may not assert failure to comply with RCW 4.96.020 as a defense because the city's own conduct affirmatively misled him to believe his claim was adequate. He points out that the claim form supplied by the city asked only for his current residential address; it did not mention that he was to provide any previous address. He contends the city violated CR 9(c) when answering his complaint by asserting the affirmative defense of failure to comply with chapter 4.96 RCW without alerting him to the specifics of how he failed to comply. And he argues that the city concealed its intention to rely on RCW 4.96.020(3) by "burying" the facts underlying that defense in the second set of objections to his discovery request.

¶11 Renner invokes the doctrines of estoppel and waiver, relying primarily on *Dyson v. King County*, 61 Wn. App. 243, 809 P.2d 769 (1991). In *Dyson*, the county answered the claimant's complaint without raising a claim-filing defense. This was a violation of CR 9(c)'s requirement to plead a denial of performance " 'specifically and with particularity.' " *Dyson*, 61 Wn. App. at 245. The county then proceeded to defend the case for almost two years while awaiting the running of the statute of limitations. Under these circumstances we held that the county had engaged in affirmatively misleading action and was thereby "estopped" from

raising the claim-filing defense after the statute of limitations ran. *Dyson*, 61 Wn. App. at 246.

¶12 It is now clear under *Lybbert* that the doctrine to be applied when a governmental entity engages in such conduct is waiver, not estoppel. In *Lybbert*, the plaintiffs mistakenly served a summons and complaint upon the administrative assistant to the county commissioners when, by statute, they should have served the county auditor. The county appeared and for the next nine months acted as if it were preparing to litigate the merits of the case, without making any mention of a problem with sufficiency of service of process. The Lybberts served interrogatories asking the county if it intended to rely on the affirmative defense of insufficient service of process. The county did not answer the interrogatories. After the statute of limitations had run, the county answered the Lybberts' complaint and asserted, for the first time, the affirmative defense of insufficient service of process. The county then obtained summary judgment dismissal.

¶13 The Supreme Court reversed, but not on grounds of estoppel. Equitable estoppel is based on the notion that a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon. Where both parties can determine the law and have knowledge of the underlying facts, estoppel cannot lie. *Lybbert*, 141 Wn.2d at 35. Given the clear statutory mandate to serve the county auditor, the court reasoned that it was not at all reasonable, much less justifiable, for the Lybberts to rely on the county's failure to assert the affirmative defense. *Lybbert*, 141 Wn.2d at 36.

¶14 The common law doctrine of waiver, on the other hand, can preclude a defendant from asserting a defense such as insufficient service of process if it is inconsistent with the defendant's previous behavior, or if the defendant's counsel has been dilatory in asserting the defense. *Lybbert*, 141 Wn.2d at 38. In *Lybbert*, the county waived the defense by failing to raise it in its answer or responsive pleading, by

engaging in discovery over the course of several months, and by asserting the defense for the first time after the statute of limitations expired. *Lybbert*, 141 Wn.2d at 42. The court found it particularly significant that the Lybberts served the county with interrogatories designed to ascertain whether the county was going to rely on the defense of insufficient service of process. Had the county responded to these interrogatories in a timely fashion, the Lybberts would have had several days to cure the defective service. *Lybbert*, 141 Wn.2d at 42.

¶15 The facts of the present case, viewed in light of the *Lybbert* analysis, do not establish a foundation for either estoppel or waiver. While the form supplied by Marysville was arguably misleading, Renner was under no obligation to use it. He was equally as able as the city to read the statute and understand what information he had to provide. In contrast to *Dyson*, here the city did raise the claim-filing defense when it formally answered Renner's complaint. Consistent with that position, the city elaborated on the defense in the February 3, 2006 document answering Renner's interrogatories. This document was somewhat misleadingly captioned as "Objections" to his discovery requests, when it also contained answers to them. But at 21 pages it was not so long as to excuse counsel from reading it. Reading the document would have provided Renner with ample opportunity to correct the alleged defects before the statute of limitations ran in December 2006. We conclude that the city is not precluded from asserting a claim-filing defense.

¶16 On the merits, the city's position is not strong. Although courts require strict compliance with the filing deadlines provided by RCW 4.96.020, the content of the claim for damages need only substantially comply. RCW 4.96.010(1). The substantial compliance rule has two necessary conditions: First, there must be a sufficient bona fide attempt to comply with the law, notwithstanding the attempt is defective in some particular. Second, the attempt at compliance must actually accomplish the statutory pur-

pose, which is to give the governmental entity such notice as will enable it to investigate the cause and character of the injury. *Brigham v. City of Seattle*, 34 Wn.2d 786, 789, 210 P.2d 144 (1949). Required information that is totally absent from the claim "cannot be supplied by any method of construction, however liberal." *Brigham*, 34 Wn.2d at 789.

*Statement of Residence*

¶17 The purpose of the statutory requirement for stating the claimant's residences is to give the municipality "an opportunity to investigate the claimant as well as his claimed injuries." *Nelson v. Dunkin*, 69 Wn.2d 726, 728, 419 P.2d 984 (1966).

¶18 The city relies on *Brigham*, where the claim was held to be defective because it stated only the claimant's address at the time she filed the claim. It did not separately state where she had resided for six months immediately prior to the time her claim for damages accrued. The court held that her complaint was properly dismissed even though in fact she had lived at the same address for the previous six months. The statute required a separate "statement" about her residence during the six-month period, and because that statement was totally absent from her claim, it could not be supplied by liberal construction. *Brigham*, 34 Wn.2d at 789-90. The city contends that Renner's claim was defective under *Brigham* because he provided only one statement of an actual residence.

¶19 *Brigham*, however, is not on all fours because the applicable statutory language is different now than it was in 1949. In 1993, the legislature repealed the separate claim-filing statutes for cities and counties, and replaced them with a single consolidated claim-filing statute, RCW 4.96.020. LAWS OF 1993, ch. 449, §§ 1, 13. The former statute applied in *Brigham* expressly required a claim against a city to contain two separate statements regarding the claimant's actual residence:

[A] statement of the actual residence of such claimant, by street and number, at the date of presenting and filing such

claim; *and also a statement* of the actual residence of such claimant for six months immediately prior to the time such claim for damages accrued.

Rem. Rev. Stat. § 9478 (emphasis added); *see also* former RCW 35.31.010 (1967). The current statute, on the other hand, requires "a statement of the actual residence of the claimant at the time of presenting and filing the claim and for a period of six months immediately prior to the time the claim arose." RCW 4.96.020(3). In contrast to the former statute for cities that requires "a statement . . . ; and also a statement," the unpunctuated grammatical structure of the current statute indicates that a single statement of actual residence will suffice.

¶20 The language in the current statute mirrors the wording of former RCW 36.45.020 (1963), the statute formerly applicable to counties. We have found no cases decided under the former county statute requiring two separate statements for present and past residence. The leading case in which statement of residence information was held inadequate in a claim against a county is *Nelson*, 69 Wn.2d 726. We presume that the legislature was aware of *Nelson* when it chose to adopt for the current statute the same language that was before the court in *Nelson* rather than the more exacting language of the statute considered in *Brigham. Bundrick v. Stewart*, 128 Wn. App. 11, 17, 114 P.3d 1204 (2005) (the legislature is presumed to know the existing state of case law). We therefore look to *Nelson* as the primary precedent guiding the analysis of the present case.

¶21 At issue in *Nelson* was a claim for damages against Whatcom County for injuries sustained by the claimant's son in an automobile accident at an intersection where the county had failed to replace a "Yield Right-of-Way" sign. The claim stated that the claimant and his son " 'had been residents of the State of Alaska for a period of six months immediately preceding this accident.' " *Nelson*, 69 Wn.2d at 728. This was held insufficient because there was "absolutely no attempt" to state the actual residence of the

claimant at the time the claim was presented and filed, and the only effort to state the claimant's residence during the six-month period before accrual of the claim was the reference to the state of Alaska. *Nelson*, 69 Wn.2d at 728. "We need not expatiate on the size of Alaska; for all practical purposes the claimant might just as well have said that they were residents of the planet Earth." *Nelson*, 69 Wn.2d at 729.

¶22 But in dicta, the court said that the information in a claim would be sufficient as to present and past residence if it would enable the municipality, "by reasonable diligence," to locate the claimant and determine where the claimant lived in the six-month time period:

> An examination of a 1959 annotation "Sufficiency of notice of claim against municipality as regards identity, name, and residence of claimant" (63 A.L.R.2d 911-920), reveals a disposition by the courts to class as sufficient any information as to present residence of the claimant which would enable the defendant to locate the claimant by the exercise of reasonable diligence (as where a wrong address was given, but inquiry at that address would have disclosed the correct address; *Tannert v. City of Chicago*, 308 Ill. App. 327, 31 N.E.2d 342 (1941); and where there were no street addresses, a rural route number was held to be sufficient (*Tolbert v. Birmingham*, 262 Ala. 674, 81 So.2d 336, 63 A.L.R.2d 901 (1955)); but no case holds that a failure to give any address can be excused; and no case holds that just the name of a state is a sufficient address.

> With reference to the requirement of the address for 6 months' prior to accrual of the damage, the cases indicate that the information given would appear to be sufficient where it would enable the municipality, by reasonable diligence, to determine where the claimant had lived during the 6 months period, and claims have been construed liberally to find a proper statement of past residence; but a claim which failed to state any past residence has been deemed fatally defective (three cases in Washington are cited on that point: *Brigham v. Seattle*, 34 Wn.2d 786, 210 P.2d 144 (1949); *Zettler v. Seattle*, 153 Wash. 179, 279 Pac. 570 (1929); *Barton v. City of Seattle*, 114 Wash. 331, 194 Pac. 961 (1921)), and no case has been

found in which the court could, under the most liberal rules laid down, have determined that "State of Alaska" was a substantial compliance with a requirement for the statement of residence "for a period of six months immediately prior to the time the claim accrued."

*Nelson*, 69 Wn.2d at 731-32.

¶23 The city points out that in the above discussion in *Nelson*, the court favorably cites *Brigham* and other cases for the proposition that a failure to state any past residence is fatally defective. We do not disagree with that proposition. We simply note that the current statute does not contain the language "a statement . . . ; and also a statement," and so it is less exacting than the statute construed in *Brigham.* There is no literal necessity to make two distinct statements. *Cf. Brigham*, 34 Wn.2d at 787 (placing emphasis on the "and also a statement" clause in the former statute). On its face, a claim that states only one residence satisfies the current statute because, when liberally construed, such a statement implies that the claimant had the same actual residence both at the time of filing and also during the six months before the claim arose. Renner's claim as filed is valid on its face.

¶24 The city contends, however, that even if Renner's claim is valid on its face, the record on summary judgment requires dismissal of his suit because it shows that Renner did not in fact have the same residence during the entire six months before his claim arose. Renner's declaration responding to the city's motion for summary judgment states that he lived at the address on 54th Place N.E. beginning in October 2003. This was two months, not six months, before his claim arose when he was terminated in December 2003. The city reasonably infers that Renner resided somewhere else before October 2003. If so, the city was entitled to know the previous address in order to be able to investigate his background. Because the claim does not provide that address, the city argues that the record shows the claim to be fatally defective. *See Duschaine v. City of Everett*, 5 Wn.2d 181, 188, 105 P.2d 18 (1940) (claim valid on its face will be

rendered invalid if investigation shows the claimant did not in fact reside at the place given in the notice).

¶25 Our response to this argument is grounded in *Nelson*. *Nelson* states that a failure to give any address cannot be excused but otherwise claims will be liberally construed to find a proper statement of past residence. The information given "would appear to be sufficient where it would enable the municipality, by reasonable diligence, to determine where the claimant had lived during the 6 months period." *Nelson*, 69 Wn.2d at 731.

¶26 This is not a case where the claimant failed entirely to state any past residence. Renner supplied the address where he lived not only at the time of filing the claim but also for the two months immediately prior to the time his claim arose. Renner's claim is that the city of Marysville wrongfully terminated him after five years of employment. Taken in the light most favorable to Renner, these facts support an inference that the city had personnel files pertaining to Renner and by reasonable diligence could discover within them the address where Renner resided during the four months before October 2003. There is nothing in the record indicating that the city did anything at all to discover this information, let alone that it used reasonable diligence.

¶27 The inference that Renner's claim provided adequate information is further supported by the fact that the claim form supplied to Renner by the city did not specifically ask for a separate statement of his residence for the six months immediately prior to the time the claim arose, although it did specifically ask for every other item of information identified in the statute. The city suggests this omission was due to an oversight. Renner suggests it was a deliberate effort to mislead him into filing a claim that could then be attacked as defective. Perhaps the most reasonable inference, though, is that the city itself believed the information obtained from Renner's answers to the other questions on the form would be adequate to allow the city, by reasonable diligence, to fill in the gaps about where

he lived during the entire six-month period. In any event, the way the city worded its claim form is a circumstance that can be considered by the finder of fact in determining whether Renner's claim substantially complied with the statutory requirements as to residence. We therefore conclude the city was not entitled to obtain summary judgment on this issue.

### Statement of Damages

¶28 The second defect alleged by the city is that Renner failed to state "the amount of damages claimed" when he wrote "undetermined pending further investigation and discovery" and then listed the elements of his claim as including, among other things, wages and benefits "as well known to the city since termination."[4]

¶29 The amount of damages claimed does not serve as a limit to the amount of damages the claimant may eventually recover from a lawsuit. *Olson v. King County*, 71 Wn.2d 279, 287-91, 428 P.2d 562 (1967). While the residence information must be truthful, the amount of damages stated in a claim need not bear any verifiable relationship to what the case is actually worth. The point of requiring it is to facilitate efforts by the government entity to settle the claim before suit is filed.

¶30 The leading case on this issue is *Caron v. Grays Harbor County*, 18 Wn.2d 397, 139 P.2d 626 (1943). In *Caron*, the plaintiff slipped and fell from a ladder in the county clerk's office. While in the hospital, she asked the county auditor to prepare and present a claim for damages against the county on her behalf. The auditor did so, submitting a claim " 'for damages to the person of said Blanche Caron, caused from a fall while carrying on her general duty as an abstractor.' " *Caron*, 18 Wn.2d at 403. The claim did not state the amount of damages sought. The suit was tried to a jury, and the jury brought in a verdict for the plaintiff, rejecting the county's affirmative defense that

---

[4] Clerk's Papers at 74 (claim for damages).

she had failed to file a proper claim. But the trial court granted the county's motion for judgment notwithstanding the verdict and dismissed the suit. The Supreme Court affirmed. Again, the standard is substantial compliance; data not already included therein "in some form" cannot be supplied by any method of construction, however liberal. *Caron*, 18 Wn.2d at 406 (quoting *Sopchak v. City of Tacoma*, 189 Wash. 518, 520, 66 P.2d 302 (1937)). Caron's claim did not substantially comply with the essential requirements of the statute because it provided no data about the amount of damages claimed.

¶31 Here, data *was* supplied in some form. The claim informed the city precisely who Renner was and where he lived, and that his claim was for lost wages and benefits since the date of termination. As Renner's former employer, the city was familiar with his wages and benefits prior to termination. With this information, the city could calculate an approximate base amount of the claim to which it was exposed. The data supplied by Renner was at least as facilitative of settlement as a gross dollar amount that might or might not be realistic. We conclude Renner supplied sufficient information such that a trier of fact could find he substantially complied with the requirement for stating the amount of damages claimed.

¶32 In summary, Renner has raised genuine issues of material fact with respect to the city's affirmative defense based on RCW 4.96.020(3). The trial court erred in ruling that the city established its defense as a matter of law.

¶33 Reversed.

SCHINDLER, C.J., and LEACH, J., concur.

Review granted at 165 Wn.2d 1027 (2009).